THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. JAMES L. KILLINGS, Defendant-Appellant.

Fourth District   No. 4—85—0835

Opinion filed December 16, 1986.

Daniel D. Yuhas and Arden J. Lang, both of State Appellate Defender's Office, of Springfield, for appellant.

Jeffrey K. Davison, State's Attorney, of Decatur (Kenneth R. Boyle, Robert J. Biderman, and Linda Cullom, all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE McCULLOUGH delivered the opinion of the court:

On December 13, 1985, following a bench trial, the defendant was convicted of the murder (Ill. Rev. Stat. 1985, ch. 38, par. 9—1 *et seq.*) of James Bond and the attempted murder (Ill. Rev. Stat. 1985, ch. 38, pars. 8—4(a), 9—1(a)) of Wendy Estes. The defendant was subsequently sentenced to the Department of Corrections for a term of 30 years on the murder conviction and a term of 20 years on the attempted-murder conviction. The sentences were ordered to run concurrently. The defendant appeals the conviction and sentence of the circuit court, asserting three grounds in support thereof.

Initially, the defendant maintains that he was denied a fair trial when the court denied his requests for a continuance. Next, the defendant claims that the trial court improperly qualified Dr. Grant Johnson as an expert and admitted his testimony regarding circum-

stances surrounding the death of James Bond. Finally, the defendant contends that the trial court erred in considering that the defendant's conduct threatened serious harm as a statutory aggravating factor in imposing sentence. We affirm.

The charges against the defendant stemmed from a shooting that occurred on August 27, 1985. On September 5, 1985, the defendant was arraigned and the matter was set for an October 21, 1985, jury trial. On October 14, 1985, defense counsel sought a continuance alleging insufficient time to prepare his case. The court allowed the continuance and set a hearing date of November 12, 1985, for all pretrial motions. On that date, defense counsel sought a second continuance claiming that he was not prepared to proceed on his motion to suppress the defendant's statements which were made while in custody. The court denied the defense counsel's request.

In the motion to suppress, defendant alleged that all statements made to police officers should be suppressed because the defendant was intoxicated at the time, and consequently, was unable to effectively and knowingly waive his constitutional rights. At the hearing, the State presented seven police officers, each of whom testified that they had interacted with the defendant and that he was not intoxicated at the time of his arrest. At the close of the State's evidence, the defendant renewed his motion for a continuance, alleging failure to contact necessary witnesses. The court denied the defendant's request for a one-week continuance, but recessed until the next morning. The next day, defense counsel again renewed his request for a continuance, and upon denial, rested without presentation of evidence. The court then denied the defendant's motion to suppress.

On November 18, 1985, the cause was called for trial at which time the defense requested another continuance alleging insufficient time to prepare. The court denied the motion and began jury selection. After the first juror was called for *voir dire*, the defendant waived his right to a jury trial. The court admonished the defendant, caused a jury waiver to be executed, and proceeded to trial.

Evidence presented at trial indicated that Wendy Estes was the defendant's former girlfriend. At the time of the shooting, Estes was living with James Bond, the victim. On the morning of the incident, the defendant came to Bond's residence to speak with Estes. Estes told the defendant to leave and when he refused, Bond intervened, told the defendant to leave, and laid a gun on the front table. At this point, the defendant left, stating that he would return.

Estes testified that approximately one hour later she and her daughter accompanied Bond to a liquor store. They returned home

having consumed a small amount of alcohol. Estes claimed that they had returned to Bond's residence and were parked in the driveway talking when the defendant approached the car. Estes stated that she told the defendant to leave and he did, stating, "I be back [*sic*]."

Shortly thereafter, the defendant reappeared with a gun. Estes stated that the defendant said, "I'm going back to the penitentiary," and she then heard a gunshot. Estes testified that she felt several pellets land around her head and on the right side of her face. At this time, she unlocked the car door, jumped out and ducked down beside the passenger's door. She then saw the defendant reload the gun. When Estes attempted to flee the scene, the defendant fired again striking her in the right arm and shoulder. Estes stated that she continued running and entered an Eisner's store in search of assistance.

James Dellert, a sergeant with the Decatur police department, who was the first to arrive, described the scene of the shooting. He stated that Bond was in the car with his left hand on the steering wheel and his right hand on the seat of the car. Dellert further stated that when he first examined the victim, he noticed a holster stuck under the victim's crotch with a handle of an automatic weapon visible.

The State's case continued with Dr. Grant Johnson, the pathologist who performed the autopsy on James Bond. After being qualified as an expert in the field of pathology, he stated that Bond had two bullet wounds to the head and that death was caused by a hemorrhage due to the traumatization of blood vessels in the head.

Over defense objection, Dr. Johnson testified that he believed that the weapon had been discharged in a tight contact, *i.e.*, that the muzzle of the gun had been firmly held against the target. Dr. Johnson stated that he was familiar with the flight characteristics of different types of shot in conjunction with the various barrel types, although he did not consider himself to be an expert in flight or barrel characteristics. He did, however, profess to be an expert in wound ballistics, a sub-branch of ballistics dealing with how a wound looks relative to the time that a bullet hits the target and passes through.

After the presentation of the State's case, defense counsel moved for a continuance in order to secure the appearance of occurrence witness, Ray Bliefnick, a listed State's witness, for whom the defendant's subpoena had been returned. Defense counsel argued the materiality of the testimony since Bliefnick was the only eyewitness who had not had a previous relationship with any of the parties. In addition, the defense maintained that Bliefnick would offer new evidence by testifying that he had overheard an argument between two black men, one seated in a car and the other standing outside, followed by a

gunshot blast, and that upon investigating he found a pistol in the lap of the driver of the vehicle. Defense counsel argued that Bliefnick's testimony would contradict that of Estes, who had testified that no argument occurred before the shots were fired. The court ruled that the potential testimony was immaterial because it merely corroborated previously elicited evidence. The court then denied the defendant's motion for a continuance.

The defendant's case was based upon a theory of self-defense. The defendant claimed that he was still involved with Estes at the time of the incident and that he went to Bond's residence to speak with her. When the defendant first went to Bond's residence, Bond told him to leave while placing a gun on the table. The defendant admitted that after consuming a substantial amount of alcohol, he later returned, an argument ensued, and he shot Bond. The defendant, however, maintained that Bond had a gun and that he acted in self-defense. The defendant further claimed that he reloaded the gun which discharged accidentally and that he had never threatened, aimed at, or tried to shoot Estes.

At the close of the evidence, the court found the defendant guilty of murder and attempted murder. On December 2, 1985, at the post-trial and sentencing hearing, the trial court considered the statutory aggravating factors and imposed sentence.

On appeal, the defendant maintains that he did not receive a fair trial as a result of the trial court's denial of continuances, specifically at the pretrial hearing on the defendant's motion to suppress and also at the close of the State's case to procure an occurrence witness, Ray Bliefnick. In support of this argument, the defendant asserts that his public defender, who was only employed in this capacity on a part-time basis, was overburdened and consequently not prepared to proceed to trial. The defendant maintains that the trial court's denial of these continuances denied him the opportunity to prepare a complete and effective defense, and, as such, was an abuse of discretion.

■■ Although the State initially maintains that the defendant has waived this issue by failure to make a post-trial motion, we note that our supreme court has held that a post-trial motion is not necessary to preserve error in a bench trial, when the error has been brought to the attention of the trial court by motion or by timely objection, thus giving the trial court the opportunity to correct the error involved. (*People v. Hoffman* (1942), 381 Ill. 460, 45 N.E.2d 874.) Therefore, the defendant's timely objections at trial were sufficient to procure his rights to appeal.

■ On the merits, however, the decision to grant or deny a mo-

tion for continuance, by law, lies in the sound discretion of the trial court. (*People v. Friedman* (1980), 79 Ill. 2d 341, 347, 403 N.E.2d 229, citing Ill. Rev. Stat. 1973, ch. 38, par. 114—4(e).) The statute specifically enumerates circumstances which mandate the granting of a continuance and additionally require that diligence be shown on the part of the movant. (*People v. Lott* (1977), 66 Ill. 2d 290, 296, 362 N.E.2d 312, 314.) The granting of a continuance necessarily depends upon the facts and circumstances surrounding each request. *People v. Clayborne* (1977), 47 Ill. App. 3d 202, 361 N.E.2d 1141.

■■ Upon review, a conviction will only be reversed when it appears that the refusal of additional time in some manner embarrassed the accused, impeded the preparation of his defense, or prejudiced his right. (*People v. Clayborne* (1977), 47 Ill. App. 3d 202, 361 N.E.2d 1141.) The burden is on the defendant to show prejudicial error by the trial court.

■■ Where a continuance is requested to permit preparation of the case, all surrounding facts and circumstances must be evaluated. If the trial transcript indicates that the trial counsel competently represented the defendant by filing pretrial motions to suppress, cross-examining prosecution witnesses, interposing objections throughout the trial, and offering a closing argument, there is no abuse of discretion in denying a continuance. (*People v. Hayes* (1972), 52 Ill. 2d 170, 175, 287 N.E.2d 465, 467.) In the case at bar, the public defender competently represented the defendant throughout the entire trial. Defense counsel filed pretrial motions, expertly cross-examined all prosecution witnesses, objected throughout the proceedings, and presented a closing argument. Counsel did not request this continuance prior to the actual hearing date. As such, the defendant has failed to show error rising to the requisite level of prejudice with respect to the trial court's denial of continuance based upon counsel's lack of preparedness.

■■ The denial of a continuance requested to procure an additional witness will not be deemed to be a reversible error if the defendant is not diligent in seeking to obtain the witness, the testimony of the witness will be cumulative and would not be material to the case, and where the presentation of such testimony would not affect the outcome of the case. (*People v. Tillman* (1980), 82 Ill. App. 3d 430, 402 N.E.2d 825.) Here, the defense counsel requested a continuance to procure Ray Bliefnick, an occurrence witness, who would testify that there was an argument prior to the shooting and that Bond did have a gun in his lap after the shooting. The court denied the request, specifically noting that his testimony was cumulative,

that the motion was untimely, immaterial, and without sufficient foundation. The court further noted that the subpoena which the State had attempted to serve upon Bliefnick had been returned. As such, there was no guarantee that the witness could ever be produced. Consequently, there was no abuse of discretion. The court initially granted the defendant a one-month continuance to prepare. The defendant has failed to establish prejudicial error on the part of the trial court.

At trial, the State tendered Dr. Grant Johnson, the pathologist who performed the autopsy on James Bond. Johnson, who was qualified as an expert in the field of pathology, described the wounds of the victim and opined that the cause of death was hemorrhage resulting from the gunshot wounds to the head. Over defense objection, the State asked whether the doctor had an opinion as to the range of the weapon from the deceased's head when it was discharged. Defense counsel maintained that the doctor was not qualified in the area of firearms forensics, which precluded him from drawing this conclusion.

The prosecutor then proceeded to make an offer of proof to explain why the doctor was an expert in this area. The doctor explained the different fields of studies in the area of ballistics, which is the science of the flight of a bullet after it is initially discharged. The doctor stated that he was an expert in the field of terminal ballistics, specifically wound ballistics. Wound ballistics is concerned with how a wound looks relative to the time that a bullet hits a target and passes through this target. The doctor then testified as to his qualifications as an expert in wound ballistics, which included formal education as well as practical experience.

Over defense objection, the court ruled that the doctor was an expert in wound ballistics and qualified to testify as to the range of the weapon from the victim. Dr. Johnson stated that based upon his examination, he concluded that the muzzle of the gun was firmly held up against the target.

On cross-examination, the doctor testified that the extent to which the shot remains intact depends in part upon the characteristics of the shot itself. The doctor admitted that he had not examined the shotgun or performed ballistic tests upon the weapon at the time of the autopsy. The doctor further stated that he had not examined the specific shotgun shell recovered during the autopsy for powder evidence although he had examined and tested a similar shell.

The defendant maintains that Dr. Johnson was incompetent to testify as to the range from which Bond was shot because he is not a forensic pathologist, he is not an expert in flight or barrel characteristics, he inadequately examined the weapon and ammunition, and he

based his determination of range on faulty criteria.

■■■■ Expert testimony will be admitted when the subject matter is sufficiently beyond the common experience of the juror so that only persons of experience and skill are capable of forming a correct judgment as to any connected fact. (*People v. Snow* (1974), 21 Ill. App. 3d 873, 316 N.E.2d 216.) Expert testimony will also be admitted if the expert has some knowledge or experience which will aid the court or the jury in arriving at determinations on questions at issue. Expert testimony is thus admitted to aid the jury, and the credibility of the expert and the weight to be accorded his testimony is a matter for the trier of fact to determine. *People v. Platter* (1980), 89 Ill. App. 3d 803, 412 N.E.2d 181.

■ A party who tenders an expert to the court has the burden of establishing the qualifications of the expert. (*People v. Park* (1978), 72 Ill. 2d 203, 380 N.E.2d 795.) The question of whether a party has met this burden is a matter within the discretion of the trial court. (72 Ill. 2d 203, 380 N.E.2d 795.) The trial court's decision that a particular expert is qualified is subject to reversal only when it constitutes an abuse of discretion. (72 Ill. 2d 203, 380 N.E.2d 795.) The degree and manner of knowledge and the experience required of an alleged expert is directly related to the complexity of the subject matter and the corresponding likelihood of error by one insufficiently familiar therewith. 72 Ill. 2d 203, 210, 380 N.E.2d 795, 798.

■■ Although Dr. Johnson is not a forensic pathologist, he did testify to extensive education and experience in the area of wound ballistics. While wound ballistics is admittedly a complex and specialized area, the doctor impressed upon the court his years of experience and continuing education in this area. It was well within the discretion of the trial court to qualify Dr. Johnson as an expert in this area. Dr. Johnson informed the court that he was not a flight or barrel ballistics expert and further admitted on cross-examination that he had not tested the gun or the bullet used in incident. The scientific data relied upon by Dr. Johnson in formulating his opinion were not objected to during trial and furthermore are of the same general nature urged by the defendant on appeal. Dr. Johnson did not state that the factors he relied upon were exclusive, but that they were sufficient to support his opinion. As such, it was the duty of the trier of fact to weigh the credibility of the doctor's testimony and there was no abuse of discretion.

Prior to imposing sentence, the trial court considered the presentence report, the nature of the offense, the defendant's prior record, which included a prior conviction for involuntary manslaughter, the

possibilities of rehabilitation, and the protection of society. The court specifically noted that although this was not the worst type of murder, "the victim was blasted away. He was left sitting behind the wheel with even his hands on the wheel." The court also noted that the defendant's attack upon Estes was "probably the most terrifying type of experience."

The court then proceeded to apply the statutory factors in aggravation (Ill. Rev. Stat. 1985, ch. 38, pars. 1005—8—1(b), 1005—5—3.2) noting that the defendant inflicted or attempted to inflict serious bodily harm. The court then imposed a sentence of 30 years for the murder conviction and 20 years for the attempted-murder conviction. The sentences were ordered to run concurrently.

■■■ The defendant maintains that the trial court improperly considered the statutory factor of serious harm in imposing sentence because serious harm is implicit in the offense of murder as well as attempted murder. Further, the defendant contends that he is entitled to resentencing because it is impossible to determine the weight the trial court assigned to the improperly considered aggravating factor.

Initially, the State maintains that the defendant has waived this contention of error, and we must agree. A reviewing court may consider errors not properly preserved for review when the error involves a substantial right thus depriving the party of a fair and impartial trial or in a criminal case in which the evidence is closely balanced. (*People v. Pickett* (1973), 54 Ill. 2d 280, 296 N.E.2d 856.) A nonjurisdictional question which was not presented in the trial court may not be presented for the first time upon review. (*People v. Amerman* (1971), 50 Ill. 2d 196, 279 N.E.2d 353.) This rule has been applied to objections to sentencing procedures, and thus failure to object to a sentence or procedure during which it was imposed will constitute a waiver. (*People v. Nelson* (1975), 26 Ill. App. 3d 227, 324 N.E.2d 719.) In *People v. Saldivar* (1986), 113 Ill. 2d 256, 497 N.E.2d 1138, the supreme court noted that an issue may be preserved for appellate purposes without formal objection if the trial court is made aware of the argument. In this case, however, the defendant did not object when the trial court made its finding, that serious harm could be considered as a factor in aggravation, nor was there any argument on the issue. The defendant further did not file a post-trial motion and, consequently, waived the issue.

On the merits, however, it is permissible for the trial court, in applying the statutory aggravating factor that the defendant caused serious harm to the victim, to consider the force employed in the physical manner in which the victim's death was brought about. (*People v.*

*Saldivar* (1986), 113 Ill. 2d 256, 497 N.E.2d 1138.) The trial court may not, however, focus on the end result as an aggravating factor.

■■■ The fact that a particular defendant carries a gun and shoots deliberately at point blank range may be considered as an aggravating factor. (*People v. Hughes* (1982), 109 Ill. App. 3d 352, 440 N.E.2d 432, cited with approval in *People v. Saldivar* (1986), 113 Ill. 2d 256, 497 N.E.2d 1138.) Here, the defendant walked away from the victim, retrieved his shotgun, loaded the shotgun, walked up to the victim, put the muzzle of the gun to the victim's head, and fired. In this respect, the amount of force and the physical manner in which death was brought is a proper aggravating factor. With respect to Estes, the defendant reloaded the gun and chased her while threatening to kill her. The defendant fired at her as she fled the scene, having watched the defendant shoot Bond only seconds before. In this context, intent to inflict serious harm was properly considered in aggravation.

■■■ Where the reviewing court is unable to determine the weight given to an improperly considered factor, the cause must be remanded for resentencing. (*People v. Conover* (1981), 84 Ill. 2d 400, 419 N.E.2d 906.) However, where it can be determined from the record that the weight placed upon the improperly considered aggravating factor was so insignificant that it did not lead to a greater sentence, remandment is not required. *People v. White* (1986), 114 Ill. 2d 61; *People v. Reid* (1983), 94 Ill. 2d 88, 445 N.E.2d 329; *People v. Bourke* (1983), 96 Ill. 2d 327, 449 N.E.2d 1338.

■■■ In this case, the court's emphasis was on the nature of the offense, the defendant's prior record, his rehabilitative potential, the protection of the public, and deterrent to others. The court stressed the defendant's prior convictions, which included voluntary manslaughter and various firearms violations. The court, in considering the aggravating factors, read the entire list contained in the statute and stated whether each factor applied. The "serious harm" factor only received cursory attention in light of the defendant's prior convictions and the need for deterrence. The sentence imposed was properly based upon these factors and the "serious harm" factor did not have a significant effect. As a result, remandment is not required.

Affirmed.

GREEN and WEBBER, JJ., concur.