THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v.
DANIEL N. BOLDEN III, Defendant-Appellant.

Second District   No. 2—89—0190

Opinion filed March 21, 1991.

G. Joseph Weller and Barbara R. Paschen, both of State Appellate Defender's Office, of Elgin, for appellant.

Michael J. Waller, State's Attorney, of Waukegan (William L. Browers and Martin P. Moltz, both of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE UNVERZAGT delivered the opinion of the court:
Defendant, Daniel N. Bolden III, appeals his convictions of aggravated battery, arguing that they must be vacated because the aggravated batteries are lesser-included offenses of armed violence or, alternatively, that the convictions violate the one-act, one-crime principle. Defendant also appeals the length of his sentence for armed violence, arguing that the trial court improperly considered the factors in aggra-

vation and mitigation and his potential for rehabilitation. We affirm the conviction of armed violence and the sentence therefor, and we vacate the two convictions of aggravated battery and their respective sentences.

In September 1988, defendant was indicted for the offenses of armed violence premised on aggravated battery causing great bodily harm (count I) (Ill. Rev. Stat. 1987, ch. 38, pars. 12—4(a), 33A—2), aggravated battery causing great bodily harm (count II) (Ill. Rev. Stat. 1987, ch. 38, par. 12—4(a)), aggravated battery by use of a deadly weapon (count III) (Ill. Rev. Stat. 1987, ch. 38, par. 12—4(b)(1)), and attempted murder (Ill. Rev. Stat. 1987, ch. 38, pars. 8—4(a), 9—1(a)(1)). Each and every count recited that the defendant had shot William Terry in the body and leg with a gun on August 20, 1988.

On February 1, 1989, a jury found defendant guilty of the first three counts but acquitted him of attempted murder. On February 23, 1989, the trial court denied defendant's post-trial motion and, after a hearing, sentenced defendant to a term of 17 years' imprisonment for armed violence, a Class X felony, and five-year concurrent terms for the two offenses of aggravated battery, a Class 3 felony.

The record reveals the following additional facts pertinent to this appeal. William Terry, the victim, testified that, at about 3 a.m. on August 20, 1988, he left work and drove to a gas station where he purchased gas. He later went to make a telephone call at a mini-mart across the street from defendant's house. He crossed the street to the alley behind defendant's house where, as he spoke to a man named Pug, Carolyn Calloway, a tenant of defendant's, came out of the house. Shortly thereafter, defendant came out of the house and asked Terry for a ride to North Chicago. Defendant indicated that he first had to stop at his father's tavern, which was called Father's Tavern, and was located down the street from defendant's house.

Terry stated that he, Carolyn Calloway, and defendant went into the tavern and had drinks during a 10- or 15-minute period. Terry then drove defendant and Calloway to the corner of Kristan and 15th Streets in North Chicago, where Calloway got out of the car and talked to some men on the corner. After a few minutes, Calloway returned. Terry assumed that she had purchased some cocaine. Terry, Calloway, and defendant returned to Father's Tavern. After defendant unlocked the tavern door, the three went downstairs to the basement, where defendant and Calloway injected cocaine. Terry had a drink. He said that he tried some cocaine by inhaling it.

Terry estimated that they were in the basement for about an hour when he told the others he wanted to leave, but defendant said he

wanted another ride somewhere. When they went back upstairs, defendant sat on a chair by the door. The tavern door was locked, and defendant had told Terry the alarm would go off. Terry again asked to leave, but defendant would not let him do so. Terry turned to use the telephone at the bar where he was standing. He heard Calloway scream, and, as he turned around, defendant shot him in the stomach. After he was first shot, Terry attempted escape by breaking a big picture window, but could not break it at first. He ran toward defendant to keep him from shooting. Defendant shot at Terry again, but missed him. They both fell to the floor as they struggled; the gun went off again. Defendant got up and hit Terry in the face. Defendant shot at Terry again as he lay on the floor. Terry got up and again ran to the window to hit it with a barstool, and, at that point, defendant shot him in the leg. Terry knocked out the window, and defendant shot one more time. Defendant took the clip out of the gun. Terry got out through the window and crawled across the street to his car, but he did not have his keys. He stayed on the ground until the police arrived and took him to a hospital.

Dr. Yusooff Allian testified that he treated Terry's injuries surgically. Terry had five bullet holes in the small bowel, the number of holes created by the bullet as it penetrated the coiled small bowel. The doctor characterized these wounds as life threatening. The bullet in the leg was removed several days later by another physician.

Carolyn Calloway testified that she was a tenant living with her two children in the second-floor apartment of defendant's house on Tenth Street. She had known defendant for about four years. She spent August 19, the day before the shooting, getting "high" on cocaine with defendant. Defendant drove her over to Kristan and 15th Streets that day; he gave her $50 to buy cocaine. They took drugs, talked, and drank. They went out again twice that day to get more drugs and repeated the pattern of activity.

In the early morning hours of August 20, Calloway saw Terry parked in the alley behind her house. She said he wanted some cocaine. Defendant came out of his house, and they all went to Father's Tavern for a drink. Defendant went to get some money, and the three went to 15th Street, where Calloway purchased some cocaine with defendant's money. They went back into the tavern. Defendant locked the door, and they got drinks and went downstairs. Calloway and Terry smoked some cocaine. Defendant got "high," but Calloway was not sure if defendant smoked the pipe.

Calloway further testified that, after a while, they came back upstairs to get something to drink. They were going to make another

"run" for drugs, and Terry wanted to use the telephone at the bar to obtain more cocaine. Defendant was sitting at the table near the door of the tavern. Calloway was drinking and listening to music. She heard a shot. As she turned around, she saw Terry on the floor. She screamed and ran to the kitchen to hide. She heard defendant call the police.

Defendant testified that he was 43 years old and lived at 1109 Tenth Street in North Chicago. He claimed to be the landlord. He spent August 19 operating Father's Tavern, which was located down the street from his home. He closed the tavern at 9 p.m. and went home, where he ate, prepared his clothing, watched television, and then retired. After retiring, he became aware of some people coming and going from the apartment house. At about 5 a.m. on August 20, Calloway knocked on his door and asked him for $5. He went outside and observed Calloway talking to a person he called "Step" (meaning Terry). Terry wanted to share in the purchase of a bag of cocaine. Defendant said he was not interested but invited them to have a drink. Defendant went back into the house and put his weapon in his back pocket. He said he walked over to the tavern, where he found Calloway and Terry were parked. Defendant unlocked the door, let them in and locked it again. They had a drink. Calloway suggested that they buy more cocaine, but defendant stated that he was not interested. Defendant agreed to go along with them to 15th Street, where Calloway purchased cocaine.

The trio returned to the tavern. Once inside, defendant relocked the door and poured drinks. They went to the basement, where defendant observed Calloway prepare a pipe to smoke cocaine. Calloway and Terry smoked, but defendant claimed that he did not use any cocaine.

Sometime later, Terry asked to use the restroom, which was upstairs. Defendant said he had to accompany Terry upstairs. Once there, defendant suggested that they all stay upstairs. After some conversation with Terry, Calloway asked defendant for $100 to buy a whole gram of cocaine, but defendant refused.

Terry made a telephone call. Defendant claimed that he was fed up by that time, so he set off the alarm system to summon the police while Terry was on the telephone. Defendant sat down at a table near the door of the tavern waiting for the police. He asked if the other two were ready to leave. Terry said he was waiting for a telephone call. Defendant became upset. The telephone rang and Terry answered it. Terry said the call was from the drug dealer and that for a mere $100 defendant could get a whole gram of cocaine. Calloway also pleaded for the money. Defendant had a gun in his left hand and keys in the other.

Defendant further testified that Terry approached him saying, "Buy another or I will kick your ass, take your money, and your keys." He then grabbed defendant's arm and said, "Well, you ain't going nowhere." Defendant shot Terry in the stomach. As Terry lay on the floor, defendant fired two more shots on either side of Terry. As defendant attempted to go to the telephone, Terry, who was on his knees, grabbed defendant by the legs, and both men fell to the ground and wrestled. Defendant put the gun to Terry's head. Defendant got up and headed toward the telephone in the kitchen area. Terry grabbed a barstool, and defendant fired two more shots at Terry, forcing him into the corner of the bar. As defendant called the police, Terry smashed the front picture window of the bar. Defendant testified that when he fired the first shot, he was "frightened to death" and felt that Terry was going to hurt him. When the police came, defendant opened the door and gave them his gun.

On cross-examination, defendant acknowledged that up to the time when Terry was waiting for the telephone call, he had not threatened or touched defendant. Defendant admitted that he gave Calloway $30 to buy drugs.

Timothy Clark, a North Chicago police officer, testified that he first investigated the sounding of the police alarm at Father's Tavern on Tenth Street at 6:11 a.m. Clark and another officer checked the outside of the building but found all the doors secure. As he returned to the police station, at 6:34 a.m., he was dispatched back to the tavern to investigate a shooting. He found the victim lying on the corner opposite the tavern. A black male came through the door and handed him a handgun which had an empty clip in it. The officer found five spent casings in the tavern.

At the defendant's sentencing hearing, the State described the nature of defendant's violent attack upon the victim, the numerous shots fired at the victim as he lay on the floor, and the life-threatening injury caused by the shot in the abdomen. The State argued that, due to his explosive nature, defendant posed a severe threat to the community.

Defense counsel argued that the facts showed that defendant did not intend to kill the victim and could have done so had he chosen. He argued that defendant did not have a history of violence, that he had a supportive family and that he should be given a sentence which gave some hope of being restored to society.

In pronouncing sentence, the trial court noted that it considered the evidence from the trial, the presentence report, the letters of defendant, the statutory factors in aggravation and mitigation, defendant's state-

ment, and the arguments of counsel. In considering defendant's background, the court noted defendant's prior offenses only included two traffic offenses and resisting arrest. He also took notice of defendant's prior psychiatric care. The trial court noted as factors in aggravation "the facts of the case itself" and "the use of a weapon."

■ Defendant's first appellate argument is that both aggravated battery convictions must be vacated in view of his conviction of armed violence. Relying on *People v. Donaldson* (1982), 91 Ill. 2d 164, and *People v. King* (1977), 66 Ill. 2d 551, defendant points out that multiple convictions are impermissible where they are carved from the same physical act or when one conviction is for a lesser-included offense of another. Defendant correctly points out that "multiple convictions for both armed violence and the underlying felony cannot stand where a single physical act is the basis for both charges." (*Donaldson*, 91 Ill. 2d at 170.) Clearly, the aggravated battery (count II) premised on great bodily harm caused by defendant in shooting the victim "in the body and leg with a gun" is a lesser-included offense of armed violence, and the conviction on that count must be vacated.

■ Similarly, based on our decision in *People v. Williams* (1987), 155 Ill. App. 3d 332, 337-38, we must vacate the conviction on count III, aggravated battery premised on the use of a deadly weapon, where the same conduct or act stated in the armed violence charge and the other aggravated battery charge, shooting the victim "in the body and leg with a gun," is the basis for this conviction. In vacating this conviction, we emphasize that the same underlying conduct was charged identically in all three counts, and thus the State elected to treat the conduct as a single act, notwithstanding that there were two separate injuries. (See *Williams*, 155 Ill. App. 3d at 339 (and cases cited therein).) This is not a case such as *Williams*, where one physical act (stabbing) was charged in one count and another physical act (striking the victim in the face) was charged in another count. See also *People v. Crum* (1989), 183 Ill. App. 3d 473, 490-91 (where it was alleged in each count that defendant shot and killed the victim with a gun and the State failed to differentiate the conduct supporting the murder charge from the conduct supporting the armed violence charge, defendant's conduct would be treated as one act, and only the murder conviction would stand).

Defendant next argues that his 17-year prison term is excessive where (a) it was based in part on the court's consideration of an improper factor, namely, the use of a gun in committing armed violence, and where (b) the court failed to consider adequately defendant's minimal criminal background and his potential for rehabilitation.

■ Defendant failed to challenge the basis of his sentence in the trial court either at the sentencing hearing or by way of a motion to reconsider his sentence. We deem this sentencing issue waived on appeal. See *People v. Szabo* (1986), 113 Ill. 2d 83, 93; *People v. Davis* (1982), 93 Ill. 2d 155, 163; *People v. Murray* (1990), 201 Ill. App. 3d 573, 580; *People v. Craddock* (1987), 163 Ill. App. 3d 1039, 1048; *People v. Killings* (1986), 150 Ill. App. 3d 900, 909.

■ Furthermore, we do not find that plain error has occurred. For a reviewing court to modify a sentence within the statutory limits, it must appear to the reviewing court that the sentence imposed is a clear departure from the spirit and purpose of the fundamental law and the constitutional requirement that the sentence be proportionate to the nature of the offense and that the possibilities for rehabilitation be taken into account. (*People v. Plantinga* (1985), 132 Ill. App. 3d 512, 522.) A sentence is presumptively correct, and only where such a presumption has been rebutted by an affirmative showing of error will a reviewing court find that the court abused its discretion. *Plantinga*, 132 Ill. App. 3d at 522.

■ To the extent that an aggravating factor is inherent in the offense, it may not be used to enhance the sentence. (*Craddock*, 163 Ill. App. 3d at 1048, citing *People v. Conover* (1981), 84 Ill. 2d 400.) Before an aggravating factor may properly be considered in sentencing, its risk must be greater than that inherent in the offense. *Craddock*, 163 Ill. App. 3d at 1048.

■ While the classification of a crime determines the sentencing range, the severity of the sentence depends upon the degree of harm caused to the victim. The degree of harm may be considered as an aggravating factor in determining the exact length of a particular sentence even in cases where serious bodily harm is arguably implicit in the offense for which a defendant is convicted. (*People v. Saldivar* (1986), 113 Ill. 2d 256, 269.) Thus, for example, in sentencing a defendant for a conviction of voluntary manslaughter, it is permissible for the trial court, in applying the statutory aggravating factor that the defendant's conduct caused serious harm to the victim, to consider the force employed and the physical manner in which the victim's death was brought about. *Saldivar*, 113 Ill. 2d at 271.

■ The two elements of armed violence are (1) being armed with a dangerous weapon and (2) committing a felony. (*People v. Alejos* (1983), 97 Ill. 2d 502, 508.) The mere presence of a weapon of the proscribed character is sufficient; the defendant need not actually use the weapon to commit the felony. (*Alejos*, 97 Ill. 2d at 508.) In *People v. Estrella* (1988), 170 Ill. App. 3d 292, a case cited by neither party, the

defendant pleaded guilty to the offense of armed violence based on his possession of a dangerous weapon in committing aggravated battery causing great bodily harm. This court determined that the trial court could consider the actual *use* of a weapon as an aggravating factor in the commission of armed violence to the extent that the actual use of the weapon to cause serious harm, as opposed to its mere *presence*, was not implicit in the offense. Otherwise stated, the actual *use* of the weapon created harm greater than that inherent in the mere *presence* of the weapon during the commission of the crime. In *Estrella*, the trial court had noted the serious harm caused to the victim and the wanton cruelty of shooting the victim twice in the head while he lay on the ground wounded from the first shot in the chest.

■ In the present case, the trial court's statement of its reasons for the imposition of sentence was not a model of clarity, and we observe that, in appropriate circumstances, where the record does not provide us the means to determine on what basis the court fixed a particular sentence, we will find an abuse of discretion. (*People v. Bergman* (1984), 121 Ill. App. 3d 100, 109.) Such lack of clarity may result in needless appeals and a waste of judicial resources. Here, the court did state that it had considered, among other things, the evidence adduced at trial, the statement of defendant, and the arguments of counsel. Regarding factors in aggravation, the court stated that it considered the facts of the case itself and the use of a weapon. In the context of all that had preceded this comment, it is implicit that the trial court considered the violent and deliberate manner in which the weapon was used to inflict two serious injuries to the victim as opposed to considering the mere presence of the weapon. In determining whether a sentence was improperly imposed, a reviewing court should not focus on a few words or statements made by the trial court, but it is to consider the record as a whole. (*People v. Ward* (1986), 113 Ill. 2d 516, 526-27.) Before reversing a sentence imposed by the trial court, it must be clearly evident that the sentence was improperly imposed. (*Ward*, 113 Ill. 2d at 526.) Defendant has not shown, on the basis of an impermissible consideration of a factor in aggravation, that the sentence was improperly imposed. The facts of this case are analogous to those in *Estrella*.

Similarly, defendant has not shown that the factors in mitigation and his rehabilitative potential should have resulted in the imposition of the minimum sentence of six years' imprisonment he argues is appropriate in this case. The record shows that the trial court did consider defendant's minimal criminal history, the fact of his prior psychiatric care, and the arguments of counsel regarding his potential for

rehabilitation. The trial court was not required to set forth every reason or the weight given each factor considered in the sentencing decision. (*People v. Brajcki* (1986), 150 Ill. App. 3d 506, 515.) Though the court must consider the defendant's rehabilitative potential in sentencing him, such consideration need not outweigh the seriousness of the offense or other aggravating factors. (*Brajcki*, 150 Ill. App. 3d at 515.) Here, the trial court could have imposed a term of imprisonment of up to 30 years, but it imposed a term of 17 years, a term substantially below the maximum yet consistent with the seriousness of the offense under consideration. We find no plain error with respect to the sentencing issue.

In view of the foregoing, defendant's two convictions of aggravated battery and the sentences therefor are vacated. The conviction of armed violence and the sentence therefor are affirmed.

Affirmed in part; vacated in part.

WOODWARD and INGLIS, JJ., concur.