THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v.
ANTHONY FORT, Defendant-Appellant.

Second District No. 2—90—1067

Opinion filed May 20, 1992.—Rehearing denied June 12, 1992.

G. Joseph Weller and David W. Devinger, both of State Appellate Defender's Office, of Elgin, for appellant.

Paul A. Logli, State's Attorney, of Rockford (William L. Browers, Mary Beth Burns, and Lawrence M. Bauer, all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE BOWMAN delivered the opinion of the court:

Following a bench trial, on June 4, 1990, defendant, Anthony Fort, was convicted of armed robbery (Ill. Rev. Stat. 1989, ch. 38, par. 18—2(a)). On September 21, 1990, the trial court sentenced defendant to a 10-year term of imprisonment. Defendant appeals his sentence, contending that the trial court erred in considering improper factors in imposing sentence and that the sentence was excessive. Defendant did not raise any contention of error below at the time of sentencing or by means of a motion to reconsider the sentence. We affirm the judgment of the circuit court.

We recite only those facts relevant to an understanding of the issues raised. The charge stems from an incident on February 9, 1990. Charles Horton testified for the State. According to Horton, on that date, at approximately 1 p.m., Charles Horton was sitting around a desk with his uncle, Hallie Powell, and his cousin, Andre Richardson, at Best TV Rental in Rockford, Illinois. Shortly thereafter, defendant walked into the store and asked to speak with Hallie in the washroom. After a brief conversation in the washroom, defendant returned and began pacing the floor while his friends resumed their conversation in the store. When the people in the group turned their heads, they noticed that defendant had gone behind the counter with a gun in his hands, reached into the cash register and put some money into his pocket, saying, "I hate to have to do this." Defendant began to back up toward the door, pointing the gun in the general area of the group. As he did so, he said he did not want to do anything that he or they would regret. Defendant left in a white car driven by someone else.

Officer Kevin Rice testified regarding his chase and apprehension of the defendant that afternoon after receiving a broadcast over his radio. Detective George Krebs testified regarding his interview of defendant in which defendant implicated himself in the offense and identified his accomplice, Willy Tolon. Defendant stated that Tolon had furnished the weapon and had driven him to the store. Krebs stated that defendant did not appear to be under the influence of any drug at the time of the interview. However, defendant informed him that, sometime after 8:30 a.m. on the morning of the robbery, defendant had purchased and used under $100 worth of cocaine and had used some speed called "20/20 tab" just prior to the robbery. Krebs stated that, based on his 27 years of experience, he had learned that an ordinary cocaine "high" lasted about a half-hour.

Defendant testified that he had been to the store twice on the day of the robbery. On his first trip to the store at about 10 a.m., his initial intent in going there was to sell Odell Brown a gun he had obtained from Tolon, but defendant never made the offer to sell the gun after he realized Brown did not have the money. He returned the second time that day to sell the gun to Hallie Powell. He told Powell that he had not been sleeping and had been "messing with drugs" for about 10 days. He asked to borrow some money, but Powell told him he did not have any. After this conversation, defendant went to the cash drawer, pulled it open and took the money out. He had a gun in his raised right hand at this time. As he walked toward the door, he said, "I am sorry fellows." On cross-examination, defendant acknowl-

edged that he had taken the speed and got a "rush" at about 10:15 a.m. after he had talked to Brown that morning. When asked if it lasted about 15 minutes, defendant stated he was high "for quite a while."

The trial court found defendant guilty of the charge. At the sentencing hearing on September 21, 1990, Rob Woodard and Ed Davis, who had seen defendant perform as a singer in connection with the local park district, testified that defendant had promise as a musician.

Defendant testified regarding his work as a musician and his volunteer work at Washington Park Community Center; he expressed remorse for his involvement in the robbery. He attributed his involvement in the robbery to his use of drugs.

The presentence report states that the 25-year-old defendant began drinking at age 19, experienced memory blackouts and increased tolerance to alcohol, and had alcohol-related arrests. He never received alcohol abuse treatment and stated he was not in need of such treatment. Defendant also used marijuana, amphetamines and cocaine. He stated he was cocaine dependent, but despite encouragement from family members to enter drug treatment, he had never sought help.

At the sentencing hearing, after hearing testimony and the arguments of counsel, the court made the following comments which we set out at length because of the importance of their context:

"Apparently, Mr. Fort, you had a good up bringing, you are talented in many respects. I have here a letter from your first grade teacher, Sherry Seal, even at that young age, adults saw something in you that was of some import. But you took those talents that you had, which I take it were many, and then you dropped out of school. And I am talking now, Mr. Fort, I am talking to you, I am saying a word, it's called responsibility, and everything I say will go right to that word. That's what's wrong with the whole world is responsibility, nobody likes to take or be responsible for their own actions. They do something wrong and it's somebody else's fault. But let me talk about responsibility.

Sierra Clark, age 7, mother's name Cheryl Clark; name Antoine Boddie, age 5, mother's name Tracy Boddie; name Shawn Gordon, age 4, mother's name Hazel Gordon; name Jamal Gully age 2, mother's name Karen Gully; name Dion Tatum age 2, mother's name Tisia Tatum; all your offsprings [sic]. I am talking about responsibility.

During all this time \*\*\*, now we are talking age 18, and from that, when all of that was going on, we have aggravated battery \*\*\*, we have attempted rape, we have drinking, substance abuse, and we have cocaine abundant abuse. Talking now about responsibility, you [sic] sadly lacking, that's my lament for you and I am sorry for you. I really am. Because at least up to this point, whatever talents you had you kissed them good-by [sic]. Nobody made you do it, but that was the easy way. And everything that's worth anything in this world you have to work at it. Nothing comes easy. Nothing.

This sentence doesn't come easy either. It comes hard. This is a Class X felony, the maximum penalty is not less than 6 nor more than 30 years. It is a non-probational offense, I have to give at least 6 years. The reason for imposing this sentence that I will impose in just a minute are [sic] based upon my independent assessment of the argument that had been made by the prosecution and the defendant and his counsel, the assessment of the factual situation of the offense presented to this court, the prior criminal history of the defendant, the presentence report and I have read it, and the arguments of counsel.

The court having a due regard of the history, the character of the defendant, the nature and the circumstances of this offense and the public interest, that's something nobody thinks about too often these days, the public interest, certainly you don't; the Court finds that probation or conditional discharge are [sic] not a proper sentence \*\*\*. And the Court further finds that a sentence of imprisonment is the most appropriate disposition of this offender, and it is necessary for the protection of the public and in the public interest. Probation and/or conditional discharge, I believe, would deprecate the seriousness of the offender's conduct and would be inconsistent with the ends of justice.

In arriving at this sentence, I have also considered Chapter 38, section 5—5—3.1, factors in mitigation, and Chapter 38, 5—3—3—2 [sic], factors in aggravation."

The trial court then imposed a 10-year term of imprisonment.

■ Defendant advances a two-pronged argument in challenging the propriety of his sentence: (1) the court impermissibly placed undue emphasis upon the defendant's procreative lifestyle, and (2) failed to consider sufficiently defendant's drug addiction and his potential for rehabilitation in fashioning the sentence. The State first argues that defendant failed to challenge his sentence below at the sentencing

hearing or by way of a motion to reconsider and, therefore, these sentencing issues are waived on appeal. We agree. See *People v. Bolden* (1991), 210 Ill. App. 3d 940, 947, citing *People v. Szabo* (1986), 113 Ill. 2d 83, 93; *People v. Davis* (1982), 93 Ill. 2d 155, 163; *People v. Murray* (1990), 201 Ill. App. 3d 573, 580; *People v. Craddock* (1987), 163 Ill. App. 3d 1039, 1048; and *People v. Killings* (1986), 150 Ill. App. 3d 900, 909.

Defendant urges us to review this cause on the basis of plain error. (See 134 Ill. 2d R. 615(a).) Based on the record before us, we do not find that plain error has occurred. For a reviewing court to modify a sentence within the statutory limits, it must appear to the reviewing court that the sentence imposed is a clear departure from the spirit and purpose of the fundamental law and the constitutional requirement that the sentence be proportionate to the nature of the offense and that the possibilities for rehabilitation be taken into account. (*Bolden*, 210 Ill. App. 3d at 947.) A sentence is presumptively correct, and only where such a presumption has been rebutted by an affirmative showing of error will a reviewing court find that the trial court has abused its discretion. *People v. Plantinga* (1985), 132 Ill. App. 3d 512, 522.

It is true that when a record does not provide us the means to determine on what basis the court fixed a particular sentence we may find an abuse of discretion. (*People v. Bergman* (1984), 121 Ill. App. 3d 100, 109.) Here, the court clearly noted numerous factors supporting the sentence it imposed—notwithstanding its gratuitous comments that would have been better left unsaid. Contrary to defendant's assertion, the court did not place undue emphasis on defendant's procreative lifestyle. Defendant takes the comments regarding his offspring out of context. In determining the correctness of a sentence, the reviewing court should not focus on a few words or statements made by the trial court, but it is to consider the record as a whole. (*Bolden*, 210 Ill. App. 3d at 948.) An isolated remark made in passing, even though improper, does not necessarily require that defendant be resentenced. *People v. Sansorez* (1987), 156 Ill. App. 3d 986.

In the case at bar, the trial court considered the overall irresponsible behavior of defendant in various aspects of his life, noting in passing and by implication that his children were his responsibilities, among others. There is no basis in the record to support defendant's exaggerated and speculative claims that the court was punishing defendant more severely because of his "irresponsible creation of five children *** as a major contributor to a deficiency of responsibility in

the world" (according to defendant), or because of his failure to support his children. We find no such explicit references by the court. In noting his lack of responsible behavior, the court did observe that defendant had had a decent upbringing but had dropped out of school, had committed several crimes, had engaged in substance abuse, and had squandered the opportunity to use his talents.

The judgment of the trial court in imposing sentence depends on many factors, including the defendant's credibility, demeanor, general moral character, mentality, social environment, habits, and age; the court is to consider all matters reflecting upon the defendant's personality, propensities, purposes, tendencies, and indeed every aspect of his life relevant to the sentencing proceeding. (*People v. Gutirrez* (1990), 205 Ill. App. 3d 231, 268.) We find no implication of defendant's constitutional right of privacy or procreation. (But *cf. People v. McCumber* (1985), 132 Ill. App. 3d 339 (majority held that court improperly considered defendant's prior abortions in determining sentence; constitutional right of privacy implicated).) We believe a defendant's moral character, including the tendency to be irresponsible, is very much a legitimate factor for the court to consider, and we do not find that the court exceeded the bounds of decency or relevancy (see *People v. Adkins* (1968), 41 Ill. 2d 297, 301). We find no error, plain or otherwise, on the basis of the court's comments. See *McCumber*, 132 Ill. App. 3d at 347 (Heiple, J., dissenting).

Defendant also argues that the trial court did not adequately consider his drug addiction and his potential for rehabilitation. Defendant mischaracterizes the record. The trial court did, in fact, consider defendant's abuse of drugs, but determined, appropriately, that defendant was not entitled to lenient treatment. (See *People v. Whealon* (1989), 185 Ill. App. 3d 570, 573.) We believe it significant that defendant blamed the use of drugs for this criminal offense, yet the presentence report showed that he had not sought treatment for substance abuse and he did not seem to think he needed treatment for alcohol abuse despite the obvious symptoms. Defendant's lengthy letter written to the court in which he promised to lead a better life is devoid of any mention of his seeking treatment for substance abuse.

Among other things, the court considered defendant's history, including his criminal record, and his character. In weighing these factors against the seriousness of the offense and the protection of society, the court determined that imprisonment was a proper disposition. In weighing defendant's rehabilitative potential, the court

was not required to give greater weight to that consideration than to the seriousness of the offense. (*People v. Mack* (1985), 133 Ill. App. 3d 788, 793.) The 10-year sentence was well within the 30-year range of sentences permitted for this offense. There was no plain error here either.

We have found no error requiring reversal. However, we feel obligated to observe that this case exemplifies a recurring problem which occasions needless appeals and the waste of judicial resources: the trial judge's use of ill-considered or ambiguous comments which have only a tangential relationship to the fixing of the sentence and from which a defendant, perhaps grasping at straws, will imaginatively construct an argument of prejudicial error even where none truly exists. Trial judges should be the exemplars of dignity and impartiality. They should exercise restraint over their conduct and utterances. They should suppress their personal predilections and control their tempers and emotions, limiting their comments and rulings to what is reasonably required for the orderly progress of the proceeding and refraining from the unnecessary disparagement of persons or issues. See ABA Standards Relating to the Administration of Criminal Justice, Function of the Trial Judge §6.4 (1974).

We strongly urge trial judges to be circumspect and limit their comments to the factors directly relevant to the sentencing issues and to make clear and unambiguous records from which we may determine the appropriateness of sentences. To do otherwise risks the reversal of the court's judgment, a remand to the trial court for a new sentencing hearing and the concomitant waste of judicial resources.

The judgment of the circuit court is affirmed.

Affirmed.

GEIGER and DUNN, JJ., concur.