THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. DOMINGO LUNA, Defendant-Appellant.

Second District   No. 2—91—1047

Opinion filed September 23, 1992.

Michael McInerney, Public Defender, of Geneva (Judith M. Kullenberg, Assistant Public Defender, of counsel), for appellant.

Gary V. Johnson, State's Attorney, of Geneva (William L. Browers and Lawrence M. Bauer, both of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE BOWMAN delivered the opinion of the court:

Following a jury trial in the circuit court of Kane County, defendant, Domingo Luna, was convicted of battery, a Class A misdemeanor (Ill. Rev. Stat. 1989, ch. 38, par. 12—3(a)). The trial court sentenced defendant to 52 weeks' probation, 10 consecutive weekends at Kane County Correctional Center, and 50 hours' community service. Defendant appeals, contending that the trial court erred in imposing defendant's sentence by improperly emphasizing defendant's sexual irresponsibility and failing to consider mitigating factors.

Defendant and the victim, Guillermia Cruz, were husband and wife and living together in March 1990, the time of the offense. At trial, Cruz testified that she arrived home from work at 11:30 p.m. on March 16. Defendant arrived five minutes later and appeared to be drunk. Defendant told Cruz he wanted to talk to her. She replied "later" and then put the couple's baby to bed. Defendant repeated his desire to talk to Cruz, but she refused because it was too late. Defendant then grabbed Cruz by her hair and took her into their bedroom. Defendant hit her with his open hand in and around her face five or more times and accused her of cheating on him. When Cruz denied cheating on him, defendant threw her against a table, injuring her foot. Defendant then threw her facedown to the floor, sat on her back, and asked if she had a boyfriend. When she did not answer, defendant grabbed her hair, pulled her head back and slapped her again in the face. Defendant then grabbed her neck and threatened to kill her. Cruz eluded defendant's grasp momentarily, but defendant threw her on the bed, got on top of her and threatened to rape her. After eluding defendant's grasp again, Cruz ran into the baby's room and phoned a neighbor, who subsequently called the police. After she signed a complaint against defendant, Cruz went to Sherman Hospital for treatment for injuries to her head, face, and foot.

Officer Daniel Keen testified that he arrived at the couple's home at 12:48 a.m. in response to a police call regarding a domestic disturbance. He noticed five fresh bruises on Cruz' face and cheek, that her hair was messed, and that she appeared frightened. Cruz told Officer

Keen that defendant had struck her face with his fist and showed the officer a ball of approximately 20 to 30 hairs which she stated defendant had pulled off her head. Officer Keen noticed defendant's eyes were bloodshot and that defendant appeared highly intoxicated. After Cruz stated she wanted to press charges, Officer Keen placed defendant under arrest.

Defendant testified that he was a diabetic requiring insulin injections three times a day. Defendant had been working as a machine operator for the past three years. He had been unable to purchase any insulin for four days prior to the incident because he had not yet been paid that week. After he got paid on March 16, he took an insulin injection at 5 p.m. He drank two beers between 7 p.m. and 8 p.m. and then went home. He watched television the remainder of the evening and did not consume any more alcohol. At midnight, he went to pick up Guillermia Cruz from her work, but returned home when her foreman told him Cruz had already left. Defendant went back home, which took approximately four minutes, and waited for Cruz. Defendant was feeling sick from his previous lack of insulin, causing drowsiness and slurred speech, which defendant stated gives the impression of being intoxicated. Cruz arrived 10 to 15 minutes later, and defendant asked her where she had been. When she replied "None of your business," defendant grabbed her arm and said "Let's talk." Cruz then began swinging her arms at defendant. Defendant put his hands in front of his face to protect himself, and his hand brushed against Cruz' face. Cruz then ran into the bedroom, but defendant remained in the living room, where he fell asleep until the police arrived.

The jury found defendant guilty of battery (Ill. Rev. Stat. 1989, ch. 38, par. 12—3(a)). The presentence report states, *inter alia,* that the 42-year-old defendant has been employed since 1989 as a laborer at Flexonics, Inc., in Bartlett, Illinois, making $8.74 per hour, and that defendant had three various convictions from 1967 through 1975. The report also listed defendant as having the following children:

Mary Ann Luna, age 23, Indianapolis, Indiana;
Jennifer R. Luna, age 20, Truman, Arkansas;
Stella Alicia Maria Luna, age 11, Elgin, Illinois;
Carlos Martinez, age 10, Elgin, Illinois;
Donna Luna, age 5, Elgin, Illinois;
David Luna, age 3, Elgin, Illinois; and
Eleana Martinez, age 2, Elgin, Illinois.

The report also listed defendant's debts, including "Child Support—$300.00–$500.00," $745.10 owed to Sherman Hospital, and $4,000 owed to Childrens Memorial Hospital.

At the sentencing hearing, defendant testified that he had missed a lot of work because of going to court and could have been making $2 more per hour if not for this lost time. After Cruz had obtained an emergency protective order, defendant gave his baby daughter to his mother because he had no place to take her. Defendant's subsequent girlfriend had also left him. Defendant also stated that the doctors who treated Cruz at the hospital did not state that she had been injured in the incident.

During the sentencing hearing, defendant's attorney stressed that defendant had been employed at his current job continuously for the past three years, that defendant had not been arrested on any violent charge for over 20 years, and his last charge was for DUI in 1984. She also mentioned that defendant and the victim were divorced after the incident, that the only contact they have is when they exchange children on visitation, and that there had been no problems between them since the incident. Defendant's attorney also stated:

> "He also supports his children. In fact, he's got six children in the area, Your Honor, and he is supporting them. His girlfriend is pregnant at this time and is expecting her child any time this month."

After the State's Attorney presented his recommendations, which included weekend service at Kane County Correctional Center, defendant's attorney replied:

> "As far as weekends, Mr. Luna and his girlfriend are expecting the imminent birth of his child, and to ask him to serve weekends in the Kane County Jail, given the fact that he's not been arrested for anything even similar to this, Judge, since this trial, and we would be respectfully requesting a period of supervision with some type of community service."

Immediately following defense counsel's remarks, the court made the following comments:

> "THE COURT: Well, we would do a great deal for the population explosion if we put Mr. Luna away for a very long time. He can't seem to treat his sexual activities with any responsibility, even as with people to whom he's not married.
>
> He certainly does not demonstrate any suggestion of responsibility with regard to this woman that he has impregnated, there has been no indication he's going to marry her, that there's going to be any provision made for the care of that

child along with the rest of the children he's created, apparently, without regard to anybody's needs.

What's the debt to Children's Memorial Hospital? Is that one of the children you created?

THE DEFENDANT: How's that?

THE COURT: This $4,000 you say you owe Children's Memorial.

THE DEFENDANT: My son was born with a tumor in his neck.

THE COURT: How about Sherman Hospital, who's that for?

THE DEFENDANT: David. Your Honor, all children—most of them are stepchildren. Like she had two children. But my daughter, I'm paying child support, but it's not my daughter. In other words, I claim her, but it's not my daughter.

THE COURT: Stella is not your child?

THE DEFENDANT: No, Stella is, but Carlos and—

THE COURT: How about Donna?

THE DEFENDANT: Not my daughter.

THE COURT: She goes by the name of Luna?

THE DEFENDANT: Yes, because at the time she was born I was dating her mother, she put my last name.

THE COURT: She could have been your daughter?

THE DEFENDANT: No way, no, because I met her in January of '86 and Donna was born in May of '86.

THE COURT: How about David?

THE DEFENDANT: David is my son.

THE COURT: So, so far we—oh, no, one child is a stepchild?

THE DEFENDANT: Yes.

THE COURT: Carlos?

THE DEFENDANT: Stepchild.

THE COURT: And Elaina (phonetic)?

THE DEFENDANT: Stepchild.

THE COURT: So, you have no obligation to support them?

THE DEFENDANT: But I do support 'em.

THE COURT: But you're paying 50 or $60 a month in child—

THE DEFENDANT: No, 60 a week in child support for David and Donna, also paying their insurance, Your Honor, and that is—

THE COURT: How about Stella?

THE DEFENDANT: I support her also, Your Honor. She's with my mother. Those are my three children.

THE COURT: This is three children. You should be paying 32 percent of your net income as child support. Apparently you're not paying anything near that.

THE DEFENDANT: Other than paying, Your Honor, a—I also buy their clothes.

THE COURT: Under the law that's not a credit. Is there a divorce?

THE DEFENDANT: Yes, we got divorced.

THE COURT: Is there a support order in that divorce?

THE DEFENDANT: Yes.

THE COURT: What are you ordered to pay under that divorce settlement?

THE DEFENDANT: 60 a week and keep up their insurance, and I am. I believe I even have a check stub.

THE COURT: How many children do you have by your girlfriend?

THE DEFENDANT: We have none yet. She has two children.

THE COURT: This is the first one?

THE DEFENDANT: Yes. She has two. And her pregnancy was a mistake, because she has a diaphragm. Looks like she still got pregnant.

THE COURT: What days of the week do you work, sir?

THE DEFENDANT: Monday through Friday. Right now working Saturdays.

THE COURT: How long do you expect that to go on?

THE DEFENDANT: Overtime will stop around November.

THE COURT: All right. There has been a finding of guilty, judgment has been entered on that finding of guilty. Based thereon, the defendant is sentenced to serve twelve months probation, ten weekends in the Kane County Adult Correctional Center, which are to commence January 3rd, 1992.

He's to pay the costs to the Sheriff of those weekend stays. I don't know what that amount is off the top of my head.

MR. ZICK [assistant State's Attorney]: I believe it's $12 a day.

THE COURT: Perform 50 hours of community service, pay costs in the amount of $48.

Give me an order to that effect."

On appeal, defendant contends that in imposing this sentence the trial court violated defendant's constitutional right to privacy and procreation by improperly focusing upon defendant's fathering of several children by different women. Defendant further contends that the court failed to consider mitigating factors such as defendant's rehabilitative propensities, the probability of defendant's ability to become a useful member of society, defendant's steady employment, his support of his children and the ability to have contact with the victim to exchange children for visitation without incident.

■ The State first argues that defendant failed to challenge his sentence below at the sentencing hearing or by way of a motion to reconsider and, therefore, these sentencing issues are waived on appeal. We agree. See *People v. Bolden* (1991), 210 Ill. App. 3d 940, 947, citing *People v. Szabo* (1986), 113 Ill. 2d 83, 93; *People v. Davis* (1982), 93 Ill. 2d 155, 163; *People v. Murray* (1990), 201 Ill. App. 3d 573, 580; *People v. Craddock* (1987), 163 Ill. App. 3d 1039, 1048; *People v. Killings* (1986), 150 Ill. App. 3d 900, 909.

Defendant nevertheless urges us to review this cause on the basis of plain error (134 Ill. 2d R. 615(a)). Based on the record before us, we do not find that plain error has occurred. Defendant was convicted of a battery, a Class A misdemeanor (Ill. Rev. Stat. 1989, ch. 38, par. 12—3(a)). The possible sentence range for a Class A misdemeanor is a term of imprisonment less than one year. (Ill. Rev. Stat. 1989, ch. 38, par. 1005—8—3(a)(1).) A sentence of periodic imprisonment is also permissible for one convicted of a Class A misdemeanor. (Ill. Rev. Stat. 1989, ch. 38, par. 1005—7—1.) A probationary term not in excess of two years is also available for one convicted of a Class A misdemeanor. (Ill. Rev. Stat. 1989, ch. 38, par. 1005—6—2(b)(3).) Community service may also be ordered. (Ill. Rev. Stat. 1989, ch. 38, par. 1005—5—3.) Consequently, defendant's sentence was within the permissible range.

■ A trial court's sentencing decision is entitled to great deference and weight, and the standard of review is whether the trial court abused its discretion in imposing the sentence. (*People v. Streit* (1991), 142 Ill. 2d 13, 18-19; *People v. Perruquet* (1977), 68 Ill. 2d 149, 154.) For a reviewing court to modify a sentence within the statutory limits, it must appear to the reviewing court that the sentence imposed is a clear departure from the spirit and purpose of the fundamental law and the constitutional requirement that the sentence be proportionate to the nature of the offense and that the possibilities for rehabilitation be taken into account. (*People v. Bolden* (1991), 210 Ill. App. 3d 940, 947.) A sentence is presumptively correct, and only

where such a presumption has been rebutted by an affirmative showing of error will a reviewing court find that the trial court has abused its discretion. *People v. Plantinga* (1985), 132 Ill. App. 3d 512, 522.

It is true that when a record does not provide us the means to determine on what basis the court fixed a particular sentence we may find an abuse of discretion. (*People v. Bergman* (1984), 121 Ill. App. 3d 100, 109.) Here, however, the court allowed defendant to explain those children for whom he was genetically and financially responsible, notwithstanding the court's gratuitous comments regarding defendant's sexual irresponsibility. Apparently in an effort to accommodate defendant's weekends, the court also inquired into defendant's current and prospective work schedules. Thus, contrary to defendant's contentions, the trial court did not rely solely on defendant's "lifestyle and lack of consideration to the defendant's current situation and background," as cited in defendant's brief.

We also note that it was defendant's attorney who, in attempting to illustrate defendant's responsibilities, twice brought defendant's procreative history and imminent fatherhood to the court's attention. The court's gratuitous remarks came immediately after defense counsel requested no weekend incarceration, due to defendant and his girlfriend "expecting the imminent birth of his child." It is quite likely that the court's comments were in response to, or at least invited by, defense counsel's statements concerning defendant's sexual history. However, because defendant did not challenge his sentence at the hearing, or through a motion to reconsider or reduce his sentence, the trial court did not have any further opportunity to explain the basis for its comments.

The judgment of the trial court in imposing sentence depends on many factors, including the defendant's credibility, demeanor, general moral character, mentality, social environment, habits, and age; the court is to consider all matters reflecting upon the defendant's personality, propensities, tendencies, and indeed every aspect of his life relevant to the sentencing proceeding. (*People v. Gutirrez* (1990), 205 Ill. App. 3d 231, 268.) We find no implication of defendant's constitutional right of privacy or procreation. (But *cf. People v. McCumber* (1985), 132 Ill. App. 3d 339 (majority held that court improperly considered defendant's prior abortions in determining sentence; constitutional right of privacy implicated).) We believe a defendant's moral character, including the tendency to be irresponsible, is a legitimate factor for the court to consider, and we do not find that the court exceeded the bounds of decency or relevancy. (See *People v. Adkins* (1968), 41 Ill. 2d 297, 301.) Considering the nature of the of-

fense, the range of possible sentences, and the opportunity given to defendant to explain his genetic and financial responsibilities, we find no error, plain or otherwise, on the basis of the court's initial remarks. See *McCumber*, 132 Ill. App. 3d at 347 (Heiple, J., dissenting).

Having found no error requiring reversal, we nevertheless feel compelled to once again comment on the recurring tendency of trial judges' use of ill-considered comments which have only a tangential relationship to the fixing of a sentence, thereby inviting arguments of prejudicial error even where none truly exist. This court recently addressed this growing problem in *People v. Fort* (1992), 229 Ill. App. 3d 336, and our comments bear repeating here:

> "Trial judges should be the exemplars of dignity and impartiality. They should exercise restraint over their conduct and utterances. They should suppress their personal predilections and control their tempers and emotions, limiting their comments and rulings to what is reasonably required for the orderly progress of the proceeding and refraining from the unnecessary disparagement of persons or issues. See ABA Standards Relating to the Administration of Criminal Justice, Function of the Trial Judge §6.4 (1974).
>
> We strongly urge trial judges to be circumspect and limit their comments to the factors directly relevant to the sentencing issues and to make clear and unambiguous records from which we may determine the appropriateness of sentences. To do otherwise risks the reversal of the court's judgment, a remand to the trial court for a new sentencing hearing and the concomitant waste of judicial resources." *Fort*, 229 Ill. App. 3d at 342.

The judgment of the circuit court is affirmed.

Affirmed.

DOYLE and DUNN, JJ., concur.