THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. KERRY
HARLACHER, Defendant-Appellant.

Second District   No. 2—92—0028

Opinion filed May 13, 1994.

G. Joseph Weller and Patrick M. Carmody, both of State Appellate Defender's Office, of Elgin, for appellant.

Paul A. Logli, State's Attorney, of Rockford (William L. Browers, Robert J. Biderman, and David E. Mannchen, all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE BOWMAN delivered the opinion of the court:

The defendant, Kerry Harlacher, was charged by indictment with two counts of aggravated criminal sexual abuse (counts I and III) (Ill. Rev. Stat. 1991, ch. 38, par. 12—16 (a)(1) (now 720 ILCS 5/12—16(a)(1) (West 1992))) and one count of armed violence (count II) (Ill. Rev. Stat. 1991, ch. 38, par. 33A—2 (now 720 ILCS 5/33A—2 (West 1992))). Following the severance of count III, a jury trial was conducted on October 8 and 9, 1991, and the jury returned a verdict of guilty on both counts I and II. Defendant's post-trial motion was denied, and the court sentenced the defendant to a six-year term of imprisonment for his conviction of armed violence. The defendant's other conviction was vacated. A timely notice of appeal was filed. Defendant alleges numerous errors in the trial court's exclusion of evidence which would permit the jury to draw the inference that his statement to police was not voluntary. Defendant also contends that he was not allowed to develop impeachment evidence against the complainant. Defendant further contends that the trial court refused to allow defendant access to complainant's records possessed by the Family Advocate (social service agency) and Dr. Paul White. On these bases, he argues his due process rights were violated. We reverse and remand with directions.

Count I of the indictment charged the defendant with committing an aggravated criminal sexual abuse on or about February 15, 1990, and count III charged the defendant with an aggravated criminal sexual abuse occurring between March 23, 1989, and April 3, 1989.

Defendant was accused of fondling the breasts, thighs, and hips of his stepdaughter, M.G., on these two separate occasions. M.G. was

the daughter of M.C., to whom defendant was married at the time of arrest. M.G.'s father was P.G., a prominent lawyer in the community. At the time of defendant's arrest, P.G. was married to a Winnebago County associate judge.

M.G. testified that during the week of March 23 to April 3, 1989, she was on spring break and she and defendant were discussing her riding the school bus. She stated she did not want to do it any longer. The defendant asked her what she would do for him in order to not have to ride the bus anymore. She thought this was strange, so she changed the subject and went into the kitchen to make lunch. As she did so, the defendant cornered her and started to try to kiss her, and rubbed her breasts, upper thighs, and buttocks. Later on, they were sitting on the family room couch, and he proceeded to push her over, feeling her again, and lay on top of her. She struggled to get away and succeeded, going to a friend's house, where she did not tell of the incident with defendant.

On February 15, 1990, complainant and the defendant watched a movie at home. M.G.'s mother was in Kentucky on business. She noticed that defendant was wearing a robe with nothing on underneath it. She went upstairs, called a friend, and talked on the phone for 30 to 60 minutes. After she got off the phone, she got ready for bed in the bathroom. As she opened the bathroom door, defendant was there and requested a goodnight kiss. She pecked him on the cheek and he said that was not what he meant. He kissed her, picked her up, threw her over his shoulders, and eventually threw her on the bed. He pulled out a gun, held it to her left temple, and said, "Shut up or I will kill you." He fondled her. He then placed the gun against his own head and said he was going to kill himself. Eventually, he went to his own room. She went to bed, got up at 4 a.m., and went with friends to Champaign, Illinois. She returned home that afternoon.

On March 20, 1990, M.G. told her friend, R.B., of the February 15, 1990, incident. M.G. told her mother what had happened and M.C. sent the girls back to the B.'s residence. The B.'s called the police. M.G. told the police what happened. At that point, the defendant was at the Harlacher residence, having just returned from playing golf. The police arrived at the Harlacher residence and escorted the defendant to the Winnebago County Public Safety Building. Defendant's wife, M.C., also drove to the public safety building.

Defendant's wife was not permitted to enter the interview room with defendant. Detective Shimaitis accompanied him, read him his *Miranda* rights, and asked what happened. Defendant talked and

Shimaitis typed his statement. After reading his statement, defendant signed it. The statement went as follows:

"I don't remember too much of what happened a year ago. I was at home with [M.G.], my stepdaughter. My wife [M.C.] was at work. I really don't remember too much of what happened. I remember that I had my arm around her but I don't remember too much about it. We then sat down on the couch and put my arm around her again and I touched her on the breasts. I don't know why I did that. [M.G.] never said anything to her mother and neither did I. I wanted to talk to [M.C.] and get some help, but I just kept putting it off. About a month ago, [M.C.] was in Green Bay, I think. I was home [alone] with [M.G.]. I was in the basement playing with my gun, putting it to my head to shoot myself, but I didn't have any bullets in the gun. I went upstairs and passed [M.G.] in the hallway. The next thing that I knew, I was carrying [M.G.] into the bedroom. I remember [M.G.] screaming, and I put the gun to my head. I talked to her for about an hour and then she went into her room. I then followed her into her room and talked to her about me getting some help and maybe leaving the house. I talked to her for a while in her room, and then I went into my room and went to sleep. I had thought about suicide for a long time and I know that I need help."

Before trial the defendant made a motion to suppress his statement to the police on the basis that his psychiatrist, Dr. McKinney, concluded that, given defendant's emotional state at the time of arrest, the defendant would not have been making voluntary statements to Detective Shimaitis. Dr. McKinney had examined the defendant the day after his arrest, when the defendant's wife brought defendant into the psychiatric ward of SwedishAmerican Hospital. Defendant's wife noted that in the days prior to his arrest the defendant exhibited no unusual behavior. However, after defendant made his statement to Shimaitis, his wife entered the interview room and found defendant emotionally distraught and crying. After hearing arguments of counsel on the defendant's motion to suppress, the court denied it.

The court also considered defendant's motion *in limine* that day. The first paragraph requested that the prosecution be barred from introducing any evidence concerning a previous incident in which the defendant touched parts of a female relative's body. The court granted this motion. The second paragraph concerned the alleged touching incident of M.G. in 1989. The motion requested that the prosecution not be permitted to introduce any evidence of the 1989 incident at the trial for the 1990 incident. The court denied this motion.

In addition, defense counsel, the firm of Hayes & Heibert, filed a motion for leave to withdraw as counsel based on defendant's lack of financial resources. The court granted the motion. The court also granted the public defender's leave to withdraw based on the close ties between the felony division of that department and the complainant's natural father, P.G. The court proceeded to appoint Terry Deck as defense counsel.

At trial, prior to the selection of the jury, defense counsel Deck made several motions *in limine* and some motions to reconsider based on Hayes' previous motions *in limine*. One of the motions *in limine* concerned whether the State had the right to have the defendant examined by its own psychiatrist and clinical psychologist pursuant to section 115—6 of the Code of Criminal Procedure of 1963 (Ill. Rev. Stat. 1991, ch. 38, par. 115—6 (now 725 ILCS 5/115—6 (West 1992))). The State explained to the court that the court had already ordered the defendant to submit to such an examination. However, since the defense counsel had changed since the order was entered, the State posited that it had put off performing the examination until it could determine whether the new defense counsel would utilize some sort of mental health defense. The defense informed the court that at this time it could not determine whether it would be calling for the testimony of Dr. McKinney. On that information, the court ruled that it would continue the case and force the defendant to submit to the examination provided for by section 115—6. Based on that, defense counsel requested time to talk to defendant. After doing so, on the basis of the court's ruling, the defense counsel informed the court that the defendant would not be calling his own mental health experts although he did wish to purport a defense of the involuntariness of his statement to police.

The State's motions *in limine* were then addressed. Among others, one requested that the defendant be prohibited from revealing the fact that he voluntarily admitted himself to the psychiatric ward of SwedishAmerican Hospital. This motion was granted.

The State also requested that the defense be barred from introducing any evidence concerning the fact that the complainant's natural father's and stepmother's positions were a prominent lawyer and a judge, respectively, in Winnebago County. The defendant wished to assert that he felt pressure to confess due to the prominent positions of the complainant's father and stepmother. The court granted this motion.

At trial, the State put on the testimony of three police officers, the complainant, her friend R.B., and a social worker who works at the Family Advocate, Inc., an agency that provides treatment ser-

vices to child sexual abuse victims and their families. The State also read the defendant's statement into evidence. The defense put on the testimony of defendant's close friend, Kurt Kranz, the defendant's son, D.H., and the defendant. At trial, the defendant denied any intentional touching of M.G. He denied having any sexual feelings at all toward his stepdaughter. The jury returned a verdict of guilty on both counts. The defense moved that the court vacate the convictions with regard to the sexual offense on the basis that multiple convictions of both armed violence and an underlying felony cannot stand where a single physical act is the basis for both charges. (*People v. Donaldson* (1982), 91 Ill. 2d 164, 170.) Pursuant to *Donaldson*, the court vacated the conviction with regard to aggravated criminal sexual abuse. The court sentenced the defendant to a six-year term of imprisonment on the armed violence count. A timely notice of appeal was filed.

■ In the first issue on appeal, defendant asserts that he was denied a fair trial when the trial court improperly barred the defendant from presenting evidence which was pertinent to showing his statement was not voluntarily made. The trial court excluded the following pieces of evidence which defendant wished to introduce: (1) defendant's voluntary admission to the psychiatric ward of a local hospital the day after his statement to police; (2) evidence that complainant's father and stepmother were prominent members of the bar of the community; (3) defendant's wife had an alcohol consumption problem; and (4) testimony by expert psychological witnesses who would attest to defendant's susceptibility to suggestion at the time the confession was made to police.

The admission of evidence is left to the discretion of the trial court, and its ruling should not be reversed absent a clear showing of abuse of that discretion. (*People v. Enis* (1990), 139 Ill. 2d 264, 281.) Such an abuse of that discretion will be found only in cases where the trial court's decision is arbitrary, fanciful, or unreasonable or where no reasonable man would take the view adopted by the trial court. *People v. Illgen* (1991), 145 Ill. 2d 353, 364.

It is a fundamental principle of criminal procedure that a confession must be voluntary. (*People v. Melock* (1992), 149 Ill. 2d 423, 447.) The preliminary inquiry into the voluntary nature of the confession is for the trial court. (*Melock*, 149 Ill. 2d at 462.) Fundamental justice requires that defendant is entitled to every opportunity to rebut the State's proof. Defendant has a right, regardless of how substantial or infirm the evidence against him, to familiarize the jury with every circumstance attendant upon the State's elicitation of his statement. (*Melock*, 149 Ill. 2d at 465.) A de-

termination of voluntariness requires consideration of the totality of the circumstances. (*People v. Thomas* (1990), 137 Ill. 2d 500, 516.) The standard of review of a trial court's finding on a question of voluntariness of a confession is whether the finding is contrary to the manifest weight of the evidence. *Melock*, 149 Ill. 2d at 448.

In the present case, the trial court admitted the defendant's statement made to the police without making a finding as to its voluntariness. In addition, the record indicates that the court erroneously believed that if the defendant was to bring in *any* evidence of mental state, then he must be subjected to a section 115—6 hearing. The following colloquy excerpted from the record illustrates that belief:

> "[Defense counsel]: But as to those three particular issues: commitment [to the psychiatric ward], [placement in the] suicide watch unit and length of stay, I think those issues are relevant.
>
> THE COURT: But you are doing indirectly that which you can't do directly. This is why I say you have got to go into it or we don't even touch it. I mean, that's like being 20 percent pregnant.
>
> [THE STATE]: Judge, I totally agree with you, because the State has the burden of proof in this case.
>
> THE COURT: Sure you do.
>
> [THE STATE]: And any window that defense gets in, making any doubt in this jury's mind works to his advantage. He's trying to have a window here without bringing [in] expert testimony, to improperly prejudice this jury and not allowing the State to rebut this issue, and we have to.
>
> THE COURT: I can agree with you, this is why—I can agree with you, and I know what your job is. I can agree with both of you. But that doesn't answer my question. If you people want to proceed with the trial in this case, and I am ready, willing and able to do that. My ruling here has to be that we are either going to go into this sanity thing or we are going to leave it alone. And that means you are not going to mention—
>
> [Defense Counsel]: At all?
>
> THE COURT: At all.
>
> [Defense Counsel]: Even as to commitment?
>
> THE COURT: Even as to commitment."

This belief by the court, that if the defendant was going to go into any discussion of his mental state at the time of confession, the court was permitted to order the defendant to be examined by the State's psychiatrist pursuant to section 115—6, was error. Such an examination is only required in cases in which the insanity defense, a plea of guilty but mentally ill at the time of the offense, or the defense of intoxicated or drugged condition is at issue. (Ill. Rev. Stat.

1991, ch. 38, par. 115—6 (now 725 ILCS 5/115—6 (West 1992)).) In this case, defendant did not seek to rely on any of those defenses, but rather, he wished to assert that his statement to the police was not voluntary. Thus, the trial court abused its discretion in not permitting the defendant to introduce evidence of the involuntariness of his confession.

In addition, this error was not harmless error. Defendant's testimony at trial did not corroborate his statement to the police. Rather, the trier of fact had to weigh the defendant's trial testimony of his innocence against the complainant's testimony of his guilt; it came down to his word against her word. Because of this, the State's evidence in this case was not so strong as to make this error harmless.

Therefore, we reverse and remand to the trial court with directions that the following pieces of evidence be admitted in defendant's case: (1) defendant's voluntary admission to the psychiatric ward of a local hospital; (2) evidence that defendant felt pressure due to the fact that complainant's father and stepmother were prominent members of the bar of the community; (3) evidence that defendant was concerned over the fact that his wife had an alcohol-consumption problem; and (4) testimony by expert psychological witnesses who would attest to defendant's susceptibility to suggestion at the time the confession was made to police.

On the basis that we have determined that reversible error occurred, we remand for a new trial. Since defendant's other issues on appeal are alleged evidentiary errors which could arise again in a new trial, we shall address those issues below.

■ The next issue is whether the trial court erred in granting the State's motion *in limine* to bar testimony concerning whether the complainant had ever told her friend, J.J., or the defendant's son, D.H., that she wanted defendant out of the house. Defendant wanted to introduce such testimony in order to impeach complainant. The State argues that a proper foundation for such impeachment was not set forth, so the trial court's ruling excluding such evidence was not an abuse of discretion. (*People v. Bradford* (1985), 106 Ill. 2d 492, 499-50.) We agree with the State on this issue.

No proper foundation was made at trial, so the trial court's exclusion of this evidence constituted no abuse of discretion. A proper foundation requires that complainant be asked, in reference to time and location, whether she had ever told J.J. or D.H. that she wanted defendant out of the house by a certain date.

■ In the last issue on review, defendant asserts that the trial court's refusal to allow defendant access to complainant's records possessed by the Family Advocate and Dr. Paul White violated

defendant's due process rights. Furthermore, the trial court stated that it was going to conduct an *in camera* inspection of the complainant's high school records and there is no evidence that the court did so in the record.

The Family Advocate is a sexual abuse or rape counselling center which had provided counselling services to M.G. in connection with the instant charges of aggravated criminal sexual abuse. The trial court properly quashed the subpoena issued to this agency without subjecting its records to an *in camera* examination. (Ill. Rev. Stat. 1991, ch. 110, par. 8—802.1 (now codified, as amended, at 735 ILCS 5/8—802.1 (West 1992)).) Section 8—802.1 provides absolute privilege for information provided to rape crisis personnel by victims of sexual offenses. This absolute privilege barred the court from conducting an *in camera* examination which was requested by the defendant because of the strong policy involved. (*People v. Foggy* (1988), 121 Ill. 2d 337, 349.) Thus, the subpoena issued to the Family Advocate was properly quashed by the trial court.

As regards the quashing of the subpoena issued to Dr. Paul White, we determine that the fact that the trial court quashed the subpoena was not an abuse of discretion. This is because there is a two-step procedure established for defendants seeking the disclosure of privileged information or records of a witness. The defendant must first show that the requested records are material and relevant to the credibility of the witness. (*People v. McMillan* (1993), 239 Ill. App. 3d 467, 487.) Once this is done, the records are discoverable but must be examined by the trial court *in camera* if the witness claims or asserts his statutory privilege. (*McMillan*, 239 Ill. App. 3d at 487.) In the present case, the defendant had the court issue a subpoena *duces tecum* to Dr. Paul White, but at the hearing regarding the motion to quash subpoena, the defendant failed to comply with the first step of the two-step process. Dr. White was a clinical social worker who had seen M.G. in 1982 or 1983 and had no communication with her as regards the instant proceedings. The defendant made no showing that records from the examination six years prior to the instant case had any bearing on M.G.'s credibility as a witness other than a general assertion that defendant was entitled to "[all evidence] that attacks [M.G.'s] credibility." The defendant did not allege that M.G. suffered from any kind of emotional problems in the past, but just showed that complainant was seen by Dr. Paul White in 1982 or 1983 for some unknown reason. Since the defendant did not show the materiality of this evidence, he did not meet the standard set forth in *McMillan*, and we determine the subpoena was properly quashed by the trial court.

As regards the complainant's high school records, there is a discrepancy in the State's and the defendant's briefs as to whether the records were viewed *in camera* by the trial court. If they were viewed by the trial court and the court so stated, then the State's brief does not cite the record properly, that is, we were not directed to the court's comments about the school records in the trial court record. However, we determine that it would have been proper for the court to view the high school records *in camera*. On March 14, 1991, the court ordered the complainant's school records to be turned over to the court for *in camera* inspection. This is in keeping with the Illinois Students Record Act (Ill. Rev. Stat. 1991, ch. 122, par. 50—1 *et seq.* (now 105 ILCS 10/1 *et seq.* (1992 West)); *People v. Monk* (1988), 174 Ill. App. 3d 528, 537). On this basis, we affirm the trial court's order to obtain the complainant's school records and view them *in camera*.

The judgment of the circuit court is reversed, and the cause is remanded with directions.

Reversed and remanded with directions.

INGLIS, P.J., and QUETSCH, J., concur.