No. 2--96--0777 

_______________________________________________________________________________

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

_______________________________________________________________________________

THE PEOPLE OF THE STATE OF  ) Appeal from the Circuit Court

ILLINOIS,  ) of Ogle County.

  )

Plaintiff-Appellee,  )

  )

  ) No. 94--CF--156

  )  94--TR--5625

  )

PAUL C. BECK,  ) Honorable

  ) Richard E. DeMoss,

Defendant-Appellant.    ) Judge, Presiding.

_________________________________________________________________________________

JUSTICE THOMAS delivered the opinion of the court:

Defendant, Paul C. Beck, was charged by information with two counts of reckless homicide (720 ILCS 5/9--3(a) (West 1994)) and charged by complaint with driving while under the influence of alcohol (625 ILCS 5/11--501 (West 1994)).  Following a jury trial in the circuit court of Ogle County, defendant was found guilty on all charges.  He was sentenced to concurrent 10-year prison terms for the reckless homicide convictions and a concurrent 364-day jail term for the driving while under the influence of alcohol (DUI) conviction.  Defendant now appeals his convictions and sentences.  
 
We affirm the reckless homicide convictions and sentences but vacate the  DUI conviction.

On the evening of November 26, 1994, Sandra Meadows was driving her Lincoln Towncar southbound on Route 251 in rural Ogle County, Illinois.  Her daughter, Shawna Meadows, was in the front passenger seat, and her mother, Alleta Priest, was in the rear passenger seat.  At that same time, defendant was driving his Ford van northbound on Route 251.  The two vehicles collided, injuring Sandra and defendant and killing Shawna and Alleta.

Following the collision on November 26, 1994, two blood-alcohol tests were conducted on defendant.  On November 14, 1995, defense counsel filed a pretrial motion to exclude evidence of a doctor-ordered blood-alcohol test.  On January 25, 1996, defense counsel filed a pretrial motion to suppress evidence of a police-ordered blood-alcohol test taken later on.  Following a February 8, 1996, hearing on these pretrial motions, the doctor-ordered test was ruled admissible, and the police-ordered test was suppressed.  Trial was set for April 1, 1996.  On that day, defense counsel filed a motion to allow testimony concerning results of the police-ordered blood-alcohol test, waiving his earlier objection to admission of the test.  The trial judge denied the motion.

At trial, Sandra Meadows testified that on the evening of November 26, 1994, she was driving her car southbound on Route 251.  Her daughter, Shawna, was riding in the front passenger seat while her mother, Alleta Priest, was riding in the rear passenger seat.  It was dry and clear outside.  Meadows testified that she had her headlights on and was driving approximately 50 to 55 miles per hour, within the speed limit.  As she was about to crest a hill, a van with no headlights on suddenly appeared in her lane.  She jerked to the left to avoid a head-on collision.  After her vehicle collided with the van, Meadows unbuckled her seatbelt and lost consciousness.  She was taken to St. Anthony’s Hospital for treatment of her injuries.  

Ronald Quest, an Ogle County sheriff’s deputy, testified that he was called to the collision scene around 7:45 p.m. on November 26, 1994.  When he approached the Lincoln Towncar, he observed that the driver was pinned inside the car.  The front seat and rear seat passengers were dead.  About an hour later, Quest left the scene and went to St. Anthony’s Hospital.  At the hospital, he spoke with defendant, who was being treated for his injuries in the emergency room.  He detected an odor of alcohol on defendant’s breath and noted defendant’s  bloodshot eyes and slurred speech.  Based on his police experience, in which he had previously observed approximately 100 persons who were under the influence of alcohol, Quest informed defendant that he believed defendant was under the influence of alcohol.  Quest then read defendant his 
Miranda
 rights.  Defendant indicated that he understood his rights and waived them.  Quest further testified that defendant then told Quest that he had been at the Silver Dollar in Rochelle, Illinois, between 6 and 7 p.m., where he drank four 10-ounce glasses of beer.  Defendant then left the Silver Dollar and had to have his van jump-started.  He was driving to a motel in Rockford, Illinois, when the collision occurred.  Defendant did not remember anything about the collision itself.  On cross-examination, Quest admitted that had he known of defendant’s injury to his tongue, he might have changed his mind about the cause of defendant’s slurred speech.  He did not perform any field sobriety tests on defendant.  

     Scott Jaeger, a volunteer with the Lindenwood fire department rescue squad, testified that he was called to the scene of the collision on the evening of November 26, 1994.  He saw that the two vehicles were positioned 10 to 15 feet apart.  He helped to extricate defendant from the van.  Jaeger described defendant as very combative.  Defendant had a big gash on his forehead.  Jaeger testified that, in his experience as a rescue squad volunteer, accident victims who had consumed alcohol tended to be less cooperative than those who had not.  After defendant was removed from the van, Jaeger observed two full beer cans and a couple of empty beer cans sitting on the ground on one side of the van.

Martin Gorsuch, detective corporal with the Ogle County sheriff’s department, testified that he was called to the scene of the collision around 7:45 p.m. on November 26, 1994.  When he arrived at the scene, he observed that both vehicles had extensive front-end damage.  The Lincoln Towncar was on the east side of the road facing in a westerly direction.  The van was in the middle of the road facing in a southeasterly direction.  He took photographs of the scene and marked the vehicles so he could take measurements once they were removed.  Gorsuch further testified that there were two lanes at the point of collision on Route 251.  There were no skid marks on the roadway.  There were a number of gouge marks in the southbound lane, indicating to Gorsuch that maximum engagement had occurred in the southbound lane.  This finding was not inconsistent with the possibility that the Lincoln Towncar had turned to the left prior to impact.  Gorsuch was at the scene 15 to 20 minutes before he departed for St. Anthony’s Hospital.

According to Gorsuch, when he arrived at the hospital he spoke with Deputy Quest and then reinterviewed defendant in the emergency room while Quest was present.  He said that defendant understood his 
Miranda
 rights and agreed to waive them.  Defendant explained that he went to the Silver Dollar that afternoon, where he had about four 10-ounce beers.  He left the tavern and had to have his van jump-started before traveling northbound on Route 251 to a motel in Rockford.  Defendant did not recall the collision itself.  Gorsuch detected an odor of alcohol on defendant’s breath and noted defendant’s bloodshot eyes and slurred speech.  Gorsuch believed defendant was under the influence of alcohol.

Gorsuch also testified that he spoke with defendant several days later as he was being transported from the hospital to the Ogle County Jail.  He was advised of his 
Miranda
 rights and agreed to waive them.  Defendant said that he went to T.J.’s Lounge and had a couple of beers before going to the Silver Dollar, where he met up with a friend and consumed three to four 10-ounce beers.  He left the tavern and had to get his van jump-started.  He did not remember the collision.  On cross-examination, Gorsuch admitted that had he known of defendant’s injury to his tongue, he might have changed his mind about the cause of defendant’s slurred speech.  He did not perform any field sobriety tests on defendant.  Jaime Gomez, a trauma surgeon, testified that he was working at St. Anthony’s Hospital on the evening of November 26, 1994.  He examined defendant in the emergency room around 8:30 p.m. and ordered a set of blood tests to assist in the diagnosis and treatment of defendant.  The results of the tests were communicated from the hospital lab to the emergency room through a computer.  Dr. Gomez repaired lacerations to defendant’s scalp and tongue.  

Renee Ballard, a phlebotomist at St. Anthony’s Hospital, testified that she was directed to draw blood from defendant on the evening of November 26, 1994.  She drew about five or six vials and delivered them to the hospital lab for testing.  Barbara Kaiser,  a medical technologist at St. Anthony’s Hospital, testified that she performed a blood-alcohol test on defendant’s blood at 8:58 p.m., which revealed a blood alcohol content of .1392 grams per 100 liters.

After the State rested its case in chief, defense counsel moved for a directed verdict.  The motion was denied.

Randy and Bobbie Arjes testified that they were traveling northbound on Route 251 on the evening in question.  They were traveling about 55 miles per hour and came upon a white van traveling only 40 to 45 miles an hour.  They smelled exhaust fumes from the van.  They pulled alongside the van at the stop sign at the intersection of Routes 64 and 251.  There were multiple lanes at the intersection, allowing them to drive ahead of the van.  As they topped a hill about one-half mile ahead of the van, Randy noticed that the van’s headlights went out.  Just before that time, Randy saw a vehicle heading southbound and told Bobbie he thought there was going to be an accident.  Bobbie turned around and saw a flash of light that she thought was the impact of the two vehicles.  The Arjeses turned around and headed toward the crash site.  Randy approached the van.  The driver said he was okay and to see if the people in the Towncar were all right.  Randy then tried to comfort the driver of the Towncar.  In the meantime, Bobbie ran to a farmhouse to call an ambulance.    

James Watson, a bartender at T.J.’s Lounge in Rochelle, testified that defendant came to the bar on November 26, 1994, between 2:15 and 2:30 p.m.  Between the time defendant entered the bar and the time Watson left work at 5 p.m., defendant had consumed three glasses of beer. 

John Williams, a friend of defendant’s, testified that he arrived at T.J.’s Lounge between 4:30 and 5 p.m. on November 26, 1994.  Defendant had two glasses of beer with Williams at T.J.’s Lounge.  While there, defendant told Williams that he had been having trouble with his van.  They left T.J.’s Lounge around 5:30 p.m. and walked three blocks to the Silver Dollar.  Defendant drank one-half of a beer there before leaving around 6:30 p.m. 

James Coats, a bartender at the Silver Dollar in Rochelle, testified that defendant came into the bar around 6 or 6:30 p.m.  Coats could not recall whether defendant came alone or with Williams.  Defendant ordered a glass of beer and consumed most of it before he left. 

Defendant testified that he was 66 years old and married.  He was a power lineman by trade.  A native of Florida, he traveled from there on a regular basis to do work in Illinois.  At the time of the incident he had been employed by Rockford Electric Power to work on a lighting project at Rockford Airport.  On November 26, 1994, he flew from Florida to Chicago, arriving at 12:15 p.m.  He took a bus to Rockford, where he had left his 1984 Ford Econoline van.  It was both defendant’s work vehicle and the place where he lived when he had work assignments in the area.  The van would not start.  Defendant got it started using a small battery charger.  He then drove to Rochelle and entered T.J.’s Lounge around 3 p.m.  While there he consumed three 10-ounce glasses of beer.  He and Williams left around 5:30 p.m. and walked to the Silver Dollar.  Defendant drank half of another glass of beer while there before leaving about 15 minutes later.  When he discovered his van would not start once again, he got assistance having it jump-started.  Defendant then headed for Rockford.

Defendant further testified that he drove only 40 to 45 miles per hour toward Rockford.  Although he had had problems with the automatic choke that day, he had no difficulty with the van’s steering and he was familiar with Route 251.  He did not recall whether there were any full beer cans in the van prior to the collision.  He testified that in the rear of the van there were two garbage bags full of empty beer cans and pop cans, which he collected to be recycled. 

Defendant also testified that as he was driving along Route 251 he was passed by a car at the intersection of Routes 64 and 251.  He continued driving and could not recall anything about the accident itself.  Following the collision, he was taken to St. Anthony’s Hospital to be treated for his injuries.  On cross-examination, defendant remembered talking only to one police officer in the emergency room after the collision.  He might have told the police that he had consumed three or four glasses of beer at the Silver Dollar but could not remember exactly what he said.  He admitted that the beer he consumed prior to the collision had some effect on him but stated that it did not affect his ability to perform.      

Following jury deliberations, defendant was found guilty of both counts of reckless homicide as well as driving while under the influence of alcohol.  Defendant’s motion for a new trial was denied.  He was thereafter sentenced to concurrent 10-year prison terms for the reckless homicide convictions and a concurrent 364-day jail term for the DUI conviction.  Defendant's motion to reconsider the sentences was denied.  He filed a timely appeal. 

On appeal, defendant contends that (1) the State failed to prove him guilty of reckless homicide beyond a reasonable doubt; (2) the trial court abused its discretion in excluding evidence of a second blood-alcohol test administered upon police instruction; (3) the trial court erred in instructing the jury on the reckless homicide charges over defense objection; (4) the trial court abused its discretion in sentencing him on the reckless homicide and DUI convictions; and (5) the DUI conviction must be dismissed for violation of the one-act, one-crime rule.

I

Defendant first contends on appeal that the State failed to prove him guilty of reckless homicide (720 ILCS 5/9--3(a) (West 1994)) beyond a reasonable doubt. 

A conviction must be based upon proof beyond a reasonable doubt.  
People v. Foules
, 258 Ill. App. 3d 645, 653 (1993).  A reviewing court's duty is not to ask itself whether it believes the evidence establishes guilt, but whether the evidence viewed in a light most favorable to the prosecution would allow any rational trier of fact to find the essential elements of the crime proved beyond a reasonable doubt.  
Foules
, 258 Ill. App. 3d at 653.  A reviewing court may not substitute its judgment for that of the trier of fact on questions involving the weight of the evidence or the credibility of the witnesses.  
People v. Winfield
, 113 Ill. App. 3d 818, 826 (1983).  A reviewing court will not reverse a conviction unless the evidence is so improbable as to warrant a reasonable doubt of the defendant's guilt.  See 
People v. Eyler
, 133 Ill. 2d 173, 191 (1989).

Section 9--3(a) of the Criminal Code of 1961 (Code) (720 ILCS 5/1--1 
et
 
seq
. (West 1994)) provides as follows with respect to the crimes of involuntary manslaughter and reckless homicide:

"A person who unintentionally kills an individual without lawful justification commits involuntary manslaughter if his acts whether lawful or unlawful which cause the death are such as are likely to cause death or great bodily harm to some individual, and he performs them recklessly, except in cases in which the cause of the death consists of the driving of a motor vehicle, in which case the person commits reckless homicide.”  720 ILCS 5/9--3(a) (West 1994).

This court has recognized that a defendant is guilty of reckless homicide when the State proves beyond a reasonable doubt that (1) he was operating a motor vehicle; (2) he unintentionally caused a death while operating the vehicle; and (3) the acts which caused the death were performed recklessly so as to create a likelihood of death or great bodily harm to some person.  
People v. Ethridge
, 243 Ill. App. 3d 446, 464 (1993).  Intoxication is not an element of reckless homicide; however, evidence of intoxication is probative on the issue of recklessness.  
Ethridge
, 243 Ill. App. 3d at 464.  If the State introduces evidence of intoxication in a reckless homicide case, it need only present some evidence of intoxication from which, along with other circumstances, recklessness may be inferred.  
People v. Smith
, 149 Ill. 2d 558, 565 (1992).  Whether recklessness has been proved is an issue to be decided by the trier of fact.  
Smith
, 149 Ill. 2d at 565.

In the case at hand, count I of the information charged defendant with reckless homicide in violation of section 9--3(a) of the Code in that he

“while acting in a reckless manner, performed acts likely to cause the death or great bodily harm to some individual in that he operated a motor vehicle in a northerly direction upon South Rte. 251, Ogle County, Illinois while under the influence of alcohol, causing his motor vehicle to cross the center line and strike an oncoming vehicle, thereby causing the death of Shawna L. Meadows.”

Count II of the information also charged defendant with reckless homicide, using identical language except for identifying the victim as Alleta Priest.

Applying the above-mentioned legal principles, we find that the evidence presented in this case was sufficient to support defendant’s reckless homicide convictions.  The record unequivocally establishes that defendant was operating a motor vehicle and that he unintentionally caused the deaths of Shawna Meadows and Alleta Priest.  The record also establishes that defendant acted recklessly in causing their deaths.  

The State introduced ample evidence of defendant’s intoxication, which was probative on the issue of recklessness.  It introduced into evidence the testimony of two disinterested witnesses, James Watson and James Coats, who were bartenders at T.J.’s Lounge and the Silver Dollar, respectively.  Watson testified that defendant consumed three beers between 2:15 and 5 p.m. on the day of the accident.  Coats testified that defendant entered the Silver Dollar around 6 or 6:30 p.m. where he consumed most of another beer.  The State introduced into evidence the testimony of Deputy Ronald Quest and Detective Corporal Martin Gorsuch, who spoke with defendant in the emergency room at St. Anthony’s Hospital following the collision.  They each testified to having smelled alcohol on defendant’s breath, and they each testified that in their experience they believed defendant was under the influence of alcohol.  The State also introduced into evidence the results of the doctor-ordered test, which revealed that defendant had a blood alcohol level of .1392 grams per 100 liters following the collision.

In addition to the intoxication evidence, the State also introduced other evidence of defendant’s recklessness.  It offered testimonial evidence establishing that defendant crossed over the center line and into the southbound lane of traffic prior to impact.  Sandra Meadows testified that, as she was driving her car southbound on Route 251, defendant’s van suddenly appeared in her lane of traffic.  Detective Corporal Gorsuch testified that there were a number of gouge marks in the southbound lane, indicating that maximum engagement had occurred in the southbound lane.  

Despite this evidence of recklessness, defendant argues that the deaths of Shawna and Alleta were caused by his van’s mechanical failure.  We find defendant’s argument to be without merit.  Although there was evidence that defendant had had problems starting the van on the day of the accident and that the headlights had gone out prior to the collision, defendant testified that he had had no difficulty with the van’s steering.  Unlike defendant’s intoxicated condition, the mechanical problems with the van did not provide a rational explanation for the van's being in the oncoming lane of traffic at the time of the collision.  Moreover, the jury heard evidence as to the mechanical failure defense and chose to disbelieve that theory. 

We conclude that the evidence when viewed in a light most favorable to the prosecution was sufficient to support a jury finding beyond a reasonable doubt that defendant committed reckless homicide resulting in the deaths of Shawna Meadows and Alleta Priest.  Thus, we affirm defendant's convictions of reckless homicide.

II  

Defendant next contends on appeal that the trial court abused its discretion in excluding evidence of a second blood-alcohol test administered upon police instruction.

Following the collision, two blood-alcohol tests were conducted on defendant at the hospital.  The first test was doctor-ordered; the second test was police-ordered.  Defense counsel filed a pretrial motion seeking to exclude the introduction of the doctor-ordered blood-alcohol test unless the State could prove that the test was ordered by a physician on duty at the hospital and in the regular course of treatment, that the test was performed by the hospital’s own laboratory, and that the written results were received and considered by the physician on duty in the diagnosis and treatment of defendant.  Defense counsel later filed a pretrial motion seeking to suppress the police-ordered blood-alcohol test on the basis of lack of reasonable grounds or probable cause.

At the hearing on the pretrial motions, the State’s Attorney  informed the trial court that, while it did not concede the question of probable cause as to the police-ordered blood-alcohol test, the State would agree not to present evidence of the police-ordered test if the doctor-ordered  blood-alcohol test was found to be admissible.  The trial judge ultimately found the doctor-ordered blood-alcohol test, which revealed defendant’s blood-alcohol level as .1392, to be admissible.  Thus, the motion to exclude the doctor-ordered test was denied.  With the State’s assent, the motion to suppress the police-ordered test, which revealed defendant’s blood-alcohol level as .08, was granted.       

On the first day of trial, defense counsel filed a motion to allow testimony concerning the results of the police-ordered blood-alcohol test, waiving his earlier objection to the admission of the test.  Finding that a last minute admission of the police-ordered test would be prejudicial to the State, the trial judge denied the motion.

The decision to admit or exclude evidence is left to the sound discretion of the trial judge, and that decision will not be overturned on review absent a clear abuse of that discretion.  
People v. Hope
, 168 Ill. 2d 1, 23 (1995).  An abuse of discretion will be found only in cases where the trial court’s decision is arbitrary, fanciful, or unreasonable or where no reasonable person would take the view adopted by the trial court.  
People v. Harlacher
, 262 Ill. App. 3d 1, 6 (1994).

We find that the trial court did not abuse its discretion in denying defense counsel’s motion to allow testimony concerning the results of the police-ordered blood-alcohol test administered on defendant following the collision.  Defense counsel filed a pretrial motion seeking to suppress the results of that test on January 25, 1996.  That motion was granted and both sides prepared their cases based on the admission only of the doctor-ordered blood-alcohol test.  The case proceeded to trial on April 1, 1996.  The last minute introduction of testimony concerning the results of the police-ordered blood-alcohol test would have been highly prejudicial to the State.  Even if we had found that the trial court erred in not allowing the testimony concerning the police ordered blood-alcohol test, we would find such error to be harmless in light of the overwhelming evidence of defendant’s intoxication on the night of the collision as set forth above.

In light of our finding that the trial court did not abuse its discretion in denying defense counsel’s last minute motion to allow testimonial evidence concerning the police-ordered blood-alcohol test, defendant alternatively contends that he received the ineffective assistance of counsel.

There is a strong presumption that counsel’s performance at trial was competent.  
People v. Hooker
, 253 Ill. App. 3d 1075, 1082 (1993).  Trial counsel’s representation must be deemed effective unless counsel’s performance is both defective and prejudicial to the defense. 
Strickland v. Washington
, 466 U.S. 668, 687, 80 L. Ed. 2d 674, 693, 104 S. Ct. 2052, 2064 (1984).  Due to interests in judicial economy, a reviewing court may proceed directly to the second prong and may first determine whether or not a defendant has suffered any prejudice as a result of the alleged deficiency before ever determining that one actually exists.  See 
People v. Caballero
, 126 Ill. 2d 248, 260 (1989).  If the ineffective assistance of counsel claim can be disposed of on the basis that the defendant did not suffer prejudice, a reviewing court need not decide whether the claimed errors were serious enough to constitute less than reasonably effective assistance.  See 
People v. Humphries
, 257 Ill. App. 3d 1034, 1042 (1994).

In the interests of judicial economy, we examine whether the alleged deficiency of defense counsel in failing to seek the admission of the results of the police-ordered blood-alcohol test prior to the day of trial prejudiced defendant.  Had defense counsel sought to introduce such evidence in a timely fashion, the trial court undoubtedly would have allowed its introduction.  However, even though the police-ordered test revealed defendant’s blood-alcohol level to be .08, lower than the doctor-ordered test revealing defendant’s blood-alcohol level to be .1392, we do not find that the police-ordered test results would have caused the jury to find differently on the reckless homicide charges.  The doctor-ordered blood-alcohol test was not the only evidence of defendant’s intoxication.  See 
People v. Bodoh
, 200 Ill. App. 3d 415, 427 (1990) (a determination of whether a person is under the influence of alcohol does not rest solely on the results of chemical analysis).  As discussed above, there was other evidence that defendant not only was drinking shortly before the collision but was intoxicated.  Moreover, since the police-ordered blood-alcohol test was taken hours later than the doctor-ordered blood-alcohol test, it would  have been only natural for those results to have revealed a diminished blood-alcohol level.  See 
Zoerner v. Iwan
, 250 Ill. App. 3d 576, 577 (1993) (where blood alcohol tests revealed diminishing alcohol levels of .247 at 4:11 a.m., .160 at 5:40 a.m., and .010 at 1:44 p.m.).  Finding, therefore, that defendant was not prejudiced by the failure to allow testimony concerning the results of the police-ordered blood-alcohol test, we find no ineffective assistance of counsel.

III

Defendant also contends on appeal that the trial court erred in instructing the jury on the reckless homicide charges over defense objection.

In the present case, the State’s proposed instruction No. 13 stated:

“A person is under the influence of alcohol or other drugs for the purpose of a reckless homicide when he drives a vehicle while the alcohol concentration in his blood or breath is 0.10 percent or more.”

The State’s proposed instruction No. 17 stated, in relevant part:

“If you find that at the time the defendant drove a vehicle that the amount of alcohol concentration in the defendant’s blood or breath was 0.10 percent or more, you may presume that the defendant was under the influence of alcohol.  You never are required to make this presumption.  It is for the jury to determine whether the presumption should be drawn.  You should consider all of the evidence in determining whether the defendant was under the influence of alcohol.”

Defense counsel argued that the giving of both instructions would be confusing to the jury and specifically objected to the State’s instruction No. 13.  Defense counsel argued that if defendant’s blood-alcohol level was 0.10, the State’s instruction No. 17 merely allowed the jury to presume defendant was under the influence of alcohol whereas the State’s instruction No. 13 required the jury to presume defendant was under the influence of alcohol.  The trial court gave the instructions despite defense counsel’s objection to the State’s proposed instruction No. 13 (defense counsel did not object to the State’s instruction No. 17) in light of the State’s proposed instruction No. 17.

It is well established that every litigant is entitled to have the jury instructed as to the law governing the case.  
Malek v. Lederle Laboratories
, 125 Ill. App. 3d 870, 872 (1984).  The instructions must be sufficiently clear so as not to confuse or mislead the jury.  
Malek
, 125 Ill. App. 3d at 872.  According to Supreme Court Rule 451(a) (134 Ill. 2d R. 451(a)), juries in criminal cases must be instructed pursuant to the Illinois Pattern Jury Instructions (IPI), Criminal, unless the court determines that the particular instruction does not accurately state the law.  See 
People v. Haywood
, 82 Ill. 2d 540, 545 (1980); 
People v. Testin
, 260 Ill. App. 3d 224, 230 (1994).  Absent a clear abuse of discretion, a trial court’s determination of the form in which an instruction is given will not be disturbed on review.  
People v. Curtis
, 262 Ill. App. 3d 876, 890 (1994). 

The case at hand proceeded to jury trial in April 1996.  Defendant was charged with the crimes of reckless homicide and driving while under the influence of alcohol.  We do not find that the giving of the State’s Instruction Nos. 13 and 17 served to confuse the jury.  The State’s Instruction No. 13 went to the reckless homicide charge whereas the State’s Instruction No. 17 went to the DUI charge.  Both counsels had the opportunity during closing arguments to clarify that these instructions related to separate charges and that the  presumption of State’s instruction No. 13 did not relate to the  presumption of State’s instruction No. 17.  

Furthermore, we find that the State’s instruction No. 13 was proper and did not relieve the State of its burden of proof of the reckless homicide charges.  The State’s instruction No. 13 was virtually identical to Illinois Pattern Jury Instruction No. 7.09X (Illinois Pattern Jury Instructions, Criminal, No. 7.09X (3d ed. Supp. 1996)) (hereinafter IPI Criminal 3d No. 7.09X (Supp. 1996)), which reads:

“A person is under the influence of alcohol or other drugs for the purpose of aggravated reckless homicide when he drives a vehicle while [(the alcohol concentration in his blood or breath is 0.10 percent or more)(under the influence of alcohol or any other drug or drugs to the degree which renders him incapable of safely driving)].”

The Committee Note to that instruction expressly states that the instruction is to be given in cases in which the defendant is charged with reckless homicide including an allegation of intoxication.  IPI Criminal 3d No. 7.09X, Committee Note, at 81.  Such is the case here.  While committee comments are not the law, the trial court is allowed to deviate from the suggested instructions and format only where necessary to conform to unusual facts or new law (
People v. Whitaker
, 263 Ill. App. 3d 92, 98 (1994)), neither of which is present here.  Despite the fact that this instruction required the jury to presume defendant to be under the influence of alcohol since defendant’s blood-alcohol level was .1392, this instruction did not require the jury to find defendant guilty of reckless homicide based on that presumption.  As discussed earlier, where the State introduced evidence of intoxication, it still was required to introduce additional evidence from which recklessness could be inferred.  Here, the State introduced evidence that defendant drove his vehicle into oncoming traffic.  

We find that the trial court did not abuse its discretion in issuing the State’s instruction No. 13.

IV

Defendant next contends that the trial court abused its discretion in sentencing defendant on the reckless homicide and DUI convictions. 

A trial court is vested with considerable discretion in imposing a sentence, and a sentence consequently will not be modified on appeal in the absence of an abuse of that discretion.  
People v. Boclair
, 225 Ill. App. 3d 331, 335 (1992).  For a reviewing court to modify a sentence within the statutory limits, it must appear to the court that the sentence imposed is a clear departure from the spirit and purpose of the fundamental law and the constitutional requirement that the sentence be proportionate to the nature of the offense.  
People v. Luna
, 234 Ill. App. 3d 544, 550 (1992).  A sentence is presumptively correct, and only where such presumption has been rebutted by an affirmative showing of error will a reviewing court find that the trial court abused its discretion.  
Luna
, 234 Ill. App. 3d at 550-51.

Here, a jury found defendant guilty of two counts of reckless homicide, ordinarily a Class 3 felony.  See 720 ILCS 5/9--3(d)(2) (West 1994).  However, reckless homicide is bumped up to a Class 2 felony in cases where a defendant is also proved to be under the influence of alcohol.  See 720 ILCS 5/9--3(e) (West 1994).  The possible sentence range for a Class 2 felony is a term of imprisonment not less than 3 years and not more than 14 years (720 ILCS 5/9--3(e) (West 1994)).  Defendant was sentenced to concurrent 10-year prison terms for his reckless homicide convictions.  Thus, the sentences imposed for defendant’s reckless homicide convictions were within the legislative limitations.  See 
People v. Clemons
, 179 Ill. App. 3d 667, 673 (1989) (where this court recognized that when the sentence imposed is within the limits established by the legislature, it will not be modified merely because a reviewing court might have balanced the appropriate factors differently and imposed a different sentence). 

 The jury also found defendant guilty of driving while under the influence of alcohol (625 ILCS 5/11--501 (West 1994)), a Class A misdemeanor (625 ILCS 5/11--501(c) (West 1994)) punishable by up to a year in prison (730 ILCS 5/5--8--3(a)(1) (West 1994)).  Defendant was sentenced to a concurrent 364-day jail term for the DUI conviction.  Because the finding that defendant was driving while under the influence of alcohol was used to enhance the reckless homicide convictions from Class 3 to Class 2 offenses, driving while under the influence of alcohol served as a lesser included offense of reckless homicide.  Consistent with double jeopardy principles, defendant could not therefore be convicted and sentenced on the lesser included offense of driving while under the influence of alcohol.  See
 People v. Eggerman
, 292 Ill. App. 3d 644, 647 (1997) (double jeopardy clause prohibits punishment for both greater and lesser included offense).

Defendant argues that the trial court abused its discretion in sentencing defendant because it considered improper evidence, specifically (1) verbal statements of Sandra Meadows and her husband at the sentencing hearing; and (2) a number of letters written by friends and a relative of the victims on behalf of the victims that were included as part of the presentence report.    

Victim impact statements concerning the effects upon the victim’s family are both relevant and admissible during the sentencing phase of the trial.  
People v. Gonzales
, 285 Ill. App. 3d 102, 104 (1996).  Pursuant to the Rights of Crime Victims and Witnesses Act, a crime victim includes a parent of a person killed as a result of a violent crime.  725 ILCS 120/3(a)(3) (West 1994).  Hence, both parents of Shawna Meadows were entitled to present victim impact statements at the sentencing hearing (see 
Gonzales
, 285 Ill. App. 3d at 104 (the trial court may consider victim impact evidence from more than one source)) and to do so verbally in lieu of a written statement.  As for the letters submitted by the friends of the victims,  the trial judge stated that he had considered the presentence report.  Even though the letters were included as part of the presentence report, the trial judge did not specifically refer to any of the letters submitted by the friends of the victims.  Thus, while consideration of the letters penned by persons other than family members or victims could have been improper
, from our review of the record it is clear that the trial court gave no undue weight to the letters in imposing sentence. 

Defendant also argues that the trial court abused its discretion in sentencing defendant because it gave undue consideration to the aggravating factor of the serious bodily harm  caused by defendant’s conduct.

Here, the trial court mentioned several factors in aggravation, including the serious bodily harm, namely, the deaths of two individuals, caused by defendant’s conduct.  The court’s consideration of the deaths of the victims in aggravation was improper because death is implicit in the offense of reckless homicide.  See 
People v. Allan
, 231 Ill. App. 3d 447, 459 (1992).  The consideration of an improper factor in aggravation clearly affects the defendant’s fundamental right to liberty, and a court of review must remand such a cause for resentencing, except in circumstances where the factor is an insignificant element of the defendant’s sentence.  
People v. Joe
, 207 Ill. App. 3d 1079, 1085 (1991).  In this case, it does not appear that the court placed more emphasis on the deaths of the victims than other factors it specified in aggravation, including the age of one victim being over 60 and the need to deter others from committing a similar crime.  At the sentencing hearing, the trial court also noted that there were two victims, that defendant’s blood-alcohol level was .1392, that defendant had undergone alcohol counseling just months prior to this accident yet still decided to drink and drive, and that defendant could reoffend.  Thus, we decline to remand for resentencing.  

We find no abuse of discretion by the trial court in sentencing defendant to concurrent 10-year prison terms on the reckless homicide convictions but vacate defendant’s conviction of DUI.

V

Defendant’s final contention on appeal is that the DUI conviction must be dismissed for violation of the one-act, one-crime rule.

The State urges that we find the issue to be waived.  Defendant concedes that he failed to raise this issue in the proceedings below.  Accordingly, we find the issue to be waived.  See 
Frazier & Dallas v. Dettman
, 212 Ill. App. 3d 139, 148 (1991) (the failure to raise an issue in the trial court constitutes a waiver of the issue for purposes of appeal).  Irrespective of waiver, we would not need to address this issue in light of our reversal of defendant’s conviction of DUI on other grounds.  

For the foregoing reasons, we affirm defendant's reckless homicide convictions and sentences but vacate defendant’s DUI conviction.

Affirmed in part and vacated in part.

GEIGER, P.J., and BOWMAN, J., concur.